## BROWN, Office of Price Administration, v. JATROS.

### Civil Action No. 3951.

District Court, E. D. Michigan, S. D.

May 24, 1944.

A. D. Ruegsegger, Dist. Enforcement Atty., of Cleveland, Ohio, for plaintiff.

Edward N. Barnard, of Detroit, Mich., for defendant.

PICARD, District Judge.

The above matter comes before this court on a motion to dismiss, chiefly on the ground that the Office of Price Administration regulation, fixing a ceiling on liquor sold by the glass at retail for consumption on the premises, is void as an exercise of rights and powers by the Federal government which are solely and exclusively in the States under Amendments IX, X and XXI of the Constitution. Other objections were raised, but the Court early indicated that it was solely interested in the right of even the Federal government to intrude upon the liquor traffic in the several states by price regulation.

The briefs furnished have been exceptionally clarifying and helpful, particularly those of the defendant, who has carefully discussed the constitutionality of the law which claims to give powers to the Office of Price Administration. In addition there has been a personal interest of this court, since it has always been our position that all questions of liquor control were particularly within the province of the State and the State only.

We have been controlled in our decision, however, by a very simple and to us decisive formula. By the Eighteenth Amendment to the Constitution the several states relinquished the right to "the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes".

Up to that time those rights had existed in the several sovereignties just like the right to sell (at retail) chickens, ice cream, soda water, shoes or any other food, beverage or clothing. On retail sale of these items the Federal government had never successfully intruded. Then on December 5, 1933, by proper adoption of the Twenty-First Amendment, it was provided that:

"The eighteenth article of amendment to the Constitution of the United States is hereby repealed."

That section, if standing alone, would have put liquor control right back where it was originally—under jurisdiction of each state—but so great were the objections and exceptions by those States still believing in prohibition and which were not satisfied with results under the "Wilson Bill," enacted in 1890, 27 U.S.C.A. § 121, the Webb-Kenyon Act 1913, 27 U.S.C.A. § 122, and the so-called Reed Amendment 1917, 27 U.S.C.A. § 1 note, that Section 2 was added to the Twenty-First Amendment thereby prohibiting—"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof", in other words, liquor control was a matter of state regulation as it had always been before the eighteenth amendment with the exception that it gave no state, territory or possession the right to transport or import liquor into dry territory unless that state, territory or possession permitted this of itself.

With this status of the Liquor industry before us we examined the case of State Board of Equalization of State of California et al. v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38, relied upon by defendants as authority that liquor is in a different category than other articles, necessities and luxuries now admittedly within the control and jurisdiction of the OPA. The Supreme Court has in many decisions put its stamp of approval on the right of the OPA to control food, wearing apparel, rents, and luxuries and if liquor is to escape such control it must be because liquor is exclusively a right of the state above that inherent right which each state has to control the necessities or luxuries of life. In other words, if the Young decision so holds, then we must decide for the defendant.

Examining the Young case, however, we find that California imposed a license fee of five hundred dollars for the privilege of importing beer to any place within its borders. Plaintiff argued that this privilege tax violated the Interstate Commerce clause of the Constitution and sought an injunction, claiming that the Twenty-First Amendment should be construed as prohibiting the importation of intoxicating liquor only when the state pro-

hibited the manufacture and sale within its borders—adding that if a state did not prohibit manufacture and sale it must let imported liquors compete with domestic. The Supreme Court in the Young case held that such an interpretation would involve not only a construction of the Twenty-First Amendment but a rewriting, and ruled that any state could adopt a lesser degree of regulation than total prohibition. It will be noted, therefore, that the Young decision only affects the Interstate Commerce clause of our Constitution and gives States superior rights by virtue of Section 2 of the Twenty-First Amendment, but this is not the question here and surely the Young case is not authority for any other extraordinary exclusive jurisdiction in control of liquor by individual states.

Under the war powers granted OPA through the President, we believe that the Office of Price Administration has the right to regulate the price of liquor as well as it has the price of shoes or anything else sold within the State of Michigan. In our opinion the Twenty-First Amendment did not clothe the State's right to control the sale of liquor with any higher degree than it had over the sale of other commodities within the State. Therefore when the President chooses to exercise his war powers the State has no particular priority over liquor regulation within its borders. This is really in keeping with the statement of former Chief Justice of the United States Charles Evans Hughes in "The Fighting Powers of the United States Under The Constitution" Congressional Record, Volume 55 Pt. 8, 65th Congress, First Session (Appendix):

"The power to wage war, is the power to wage war successfully. The framers of the Constitution were under no illusions as to war. They had emerged from a long struggle which had taught them the weakness of a mere confederation, and they had no hope that they could hold what they had won save as they established a Union which could fight with the strength of one people under one government entrusted with the common defense. In equipping the National Government with the needed authority in war they tolerated no limitations inconsistent with that object, as they realized that the very existence of the Nation might be at stake and that every resource of the people must be at command."

We direct attention to the words—"fight with the strength *of one people* under one government entrusted with the common defense".

This does not mean forty-eight states representing forty-eight different peoples.

The position of the President of the United States, the Commander-in-Chief, acting through act of Congress, in thus controlling the liquor industry, this court believes is justified and within his war powers and such can be legally a regulation of the Office of Price Administration.