**TAKEO TADANO v. MANNEY.**
No. 11306.

Circuit Court of Appeals, Ninth Circuit.
March 20, 1947.

E. G. Frazier and Charlie W. Clark, both of Phoenix,. Ariz., for appellant.

Frank E. Flynn, U. S. Atty., and Charles B. McAlister, Asst. U. S. Atty., both of Phoenix, Ariz., for appellee.

Before GARRECHT, STEPHENS and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

Takeo Tadano, a national of Japan, who is in custody of Immigration Officer Manney for deportation, appeals from a judgment of the district court quashing a writ of habeas corpus and dismissing the petition for his release. It is undisputed that Tadano's last entry. into the United States was on January 5, 1929, as a treaty trader under the Immigration Act of 1924, 43 Stat. 154, 8 U.S.C.A. § 203, and the United States-Japanese Treaty of Commerce and Navigation.

On December 26, 1940, a "Warrant for Arrest of Alien" was .issued against appellant, in which it was stated that he was

subject to deportation under "The Immigration Act of 1924, in that he has remained in the United States after failing to *maintain the exempt status,* under which he was admitted as an alien entitled to enter the United States solely to carry on trade under the provisions of Section 3(6) of said Act [emphasis ours]."

At the time of appellant's entry, § 3(6) of the Immigration Act of 1924, 43 Stat. 154, was as follows: "When used in this Act the term 'immigrant' means any alien departing from any place outside the United States destined for the United States, except * * * (6) an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of a present existing treaty of commerce and navigation." [1] Subsequently, clause (6) was amended so as to restrict the entrant to the carrying-on of trade between the United States and the nation of his allegiance. It is agreed in this appeal that the amendment does not limit a treaty trader whose last entrance was prior in date to the amendment and, therefore, does not limit the privileges of appellant to the international trade required by the statute as amended. Shizuko Kumanomido v. Nagle, 9 Cir. 40 F.2d 42.

At the hearing before an immigration inspector on the charge in the warrant, the government introduced evidence to the effect that Tadano had worked as a farm hand and not at carrying on trade, and, therefore, he had not maintained his exempt status. (Objection to the manner of covering this issue was made, but we need not consider it.) Tadano testified, denying that he had worked as a farm hand but instead had worked at the business of produce merchant. No other issue of fact was raised.

The hearing inspector proposed the finding: "That the respondent [appellant] was admitted into the United States on January 5, 1929, under § 3(6) of the Immigration Act of 1924 as an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of an existing treaty of commerce between the United States and Japan. That following his admission respondent maintained the exempt status under which he was admitted for a period of about two or three years and then engaged in a purely domestic business as a produce merchant." The inspector recommended that Tadano should be given a limited time in which to depart the country. It is apparent that the inspector mistakenly thought Tadano subject to the limiting amendment. July 6, 1932, 47 Stat. 607, 8 U.S.C.A. § 203.

The case was reviewed by the Immigration Board of Appeals, and appellant raised the point just mentioned. The Board Chairman, who heard the appeal, considered the point upon which the hearing had been held, but based his finding upon an entirely new point in his report to his Board. We quote: "Counsel's contention is untenable since the abrogation of the Treaty of Commerce and Navigation between the United States and Japan on January 26, 1940. This alien having been admitted as a treaty trader and having failed to apply for the status of visitor for business as provided for in Circular Letter 408 of the Immigration and Naturalization Department, dated January 22, 1940, he is subject to deportation on the charge stated in the warrant of arrest." Order for Tadano's deportation followed.

No mention of the abrogation of the treaty, or of the effect the abrogation might have on appellant's status, was made, and

[1] A treaty was in effect between the United States and Japan, Treaty of commerce and navigation between the United States and Japan, at Washington, February 21, 1911; ratification advised by the Senate, with amendment, February 24, 1911; ratified by the President, March 2, 1911; ratified by Japan, March 31, 1911; ratifications exchanged at Tokyo, April 4, 1911; proclaimed, April 5, 1911, 37 Stat. 1504, which contained the following: "The citizens or subjects of each of the High Contracting Parties shall have liberty to enter, travel and reside in the territories of the other to carry on trade, wholesale and retail, to own or lease and occupy houses, manufactories, warehouses and shops, to employ agents of their choice, to lease land for residential and commercial purposes, and generally to do anything incident to or necessary for trade upon the same terms as native citizens or subjects, submitting themselves to the laws and regulations there established."

no mention of a possible application for a visitor's status for business had ever before been made in the proceedings. In fact, the proceedings, up to this point, had been conducted upon the mistaken assumption that the treaty was still in effect, and the cause for seeking appellant's deportation was laid wholly to Tadano's failure to maintain his exempt status under the terms of the treaty.

■ The position of the government in this proceeding amounts to the notion that an alien admitted to this country legally may be deported under any fact known to the Board of Appeals, which in its opinion makes his stay here illegal. However, the simple allegation that the alien has not maintained his exempt status is a conclusion, which may be drawn from any number or factual combinations, and is not suf-

ficient to inform him of the nature of the charges he must meet.

■ The alien's stay in this country, after legal entry, is not so precarious, and his deportation cannot be legally ordered through the course taken by the Board of Appeals. Of course, an alien's presence in this country is by the grace of this country. When, however, a hearing is had under a statute requiring a hearing, the hearing must conform to fair practices as they are known in Anglo-Saxon jurisprudence. The alien must be informed of the factual nature of the cause for seeking his deportation, and the order following the hearing must be based upon the charges made and must be consistent with the evidence adduced relevant to them.[2] None of these requirements were observed in this case.

---

2 Requisites of a fair hearing: Orders by administrative boards, after hearings, can be justified only by the adherence of the hearing officers to basic principles and standards which constitute the genius of our jurisprudence. Such principles and standards are designed to protect the life, liberty and property of the individual in accordance with the American standard. They are the "inexorable safeguard" of quasi judicial procedure. Morgan v. United States, 304 U.S. 1, 14, 15, 58 S.Ct. 999, 82 L.Ed. 1129; St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 73, 56 S.Ct. 720, 80 L.Ed. 1033. Former Chief Justice Hughes aptly put the idea in Morgan v. United States, supra, 304 U.S. at page 18, 58 S.Ct. at page 776, 82 L.Ed. 1129, "The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest * * * in a quasijudicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command."

Where proceedings are held under the auspices of administrative authorities all claims must be appropriately set forth so that they may be open to challenge and opposing evidence. Crowell v. Benson, 285 U.S. 22, 48, 52 S.Ct. 285, 76 L. Ed. 598. An applicant must be informed by the administrative agency of all the evidence received and considered so that he may have an opportunity to refute or

explain it. In Chin Quong Mew v. Tillinghast, 1 Cir., 30 F.2d 684, there is a statement exactly upon the point of our decision in the case at bar: "It appears that when the matter was before the Board of Review, it did not rest its decision upon the evidence taken before the Board of Special Inquiry contained in the appeal record, but also took into consideration extraneous matter—from what source derived does not appear", and such conduct was held to be highly prejudicial and unfair.

A reviewing body has no right to consider issues outside the scope of the complaint, and is limited to matters charged therein. Schneiderman v. United States, 320 U.S. 118, 159, 63 S.Ct. 1333, 87 L. Ed. 1796. This case applies the principle to cases in which personal status is involved as well as in criminal actions. For limitations in criminal cases, see Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330.

The reports of immigration cases are prolific sources for the requirement that the subject of the proceedings must be informed of all the charges made against him. Our own court said in a case strikingly like the instant one in principle (Wong Sun Fay v. United States, 9 Cir., 13 F.2d 67, 68), "If, therefore, the appellant was ordered deported for the reason stated in the two warrants, the deportation was unauthorized, and if ordered deported for some other reason, of which he was not advised, the hearing was manifestly unfair." How is one to gather evidence to refute that which he has not been advised of? To detain an individual on one charge and then to pro-

The district court should have ordered appellant released upon the writ of habeas corpus, and the proceeding, therefore, is remanded with instructions to enter a judgment in accordance with this opinion.

Reversed.

---

ceed against him on a different ground, not mentioned in the complaint, amounts to a "concealed charge" and cannot be said to be within the judicial tradition. See Yuen Boo Ming v. United States, 9 Cir., 103 F.2d 355. Nor may evidence be admitted in support of that which is not alleged or charged in order to determine the status of an individual. Chang Chow v. United States, 9 Cir., 63 F.2d 375; Yim Kim Lau v. United States, 9 Cir., 63 F.2d 377. Where a person is arrested in deportation proceedings he is entitled to be advised of any and all grounds upon which the deportation is sought in order that he may present evidence in contradiction thereof. Where the decree following his hearing contains no finding inconsistent with his right to remain in this country, he may not be deported. See Lo Hop v. United States, 6 Cir., 257 F. 489.

In Ex parte Lew Lin Shew, D.C., 217 F. 317, it is said that a " * * * statement in the warrant of deportation that 'he is unlawfully in this country, in that he has been found therein in violation of the Chinese exclusion laws,' is so broad as to convey absolutely no idea of the specific reason for which the alien has been ordered deported. It is quite true, and has been frequently so held, that in proceedings before the immigration officers, looking to the deportation of aliens, no such particularity is required as is essential in court proceedings; but this does not mean that an omnibus charge of being in this country in violation of law, which does not in any degree whatever advise the alien as to just what he is called upon to meet, will satisfy the requirements either of the law, or of good faith or of fair dealing." See Lui Hip Chin v. Plummer, 9 Cir., 238 F. 763, 765.