Mrs. Lola HORNSBY, Appellant,

v.

Ivan ALLEN, Mayor of the City of Atlanta, et al., Appellees.

No. 20656.

United States Court of Appeals Fifth Circuit.

Jan. 7, 1964.

Jones, Circuit Judge, dissented.

Wesley R. Asinof, Atlanta, Ga., for appellant.

J. C. Savage, Newell Edenfield, Atlanta, Ga., for appellees.

Before TUTTLE, Chief Judge, JONES, Circuit Judge, and JOHNSON, District Judge.

TUTTLE, Chief Judge:

Appellant Mrs. Hornsby is an unsuccessful applicant for a license to operate a retail liquor store in Atlanta, Georgia. She brings this action under 28 U.S.C. § 1343 [1] to redress an alleged deprivation of civil rights and under 28 U.S.C. § 2201 to obtain a declaration of her rights. The Mayor, the City Clerk, and the Aldermen of Atlanta are defendants. In her complaint, Mrs. Hornsby alleges that although she met all the requirements and qualifications, as to moral character of the applicant and proposed location of the store, prescribed for the holder of a retail liquor dealer's license, her application was denied "without a reason therefor" by the Mayor and Board of Aldermen. This action is characterized as "arbitrary, unreasonable, unjust, capricious, discriminatory" and in contravention of the due process and equal protection clauses of the 14th Amendment. The complaint also charges that a system of ward courtesy was followed in the issuance of liquor licenses; under this system licenses allegedly would be granted only upon the approval of one or both of the aldermen of the ward in which the store was to be located. This too is said to constitute a violation of the 14th Amendment.

1. § 1343 "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

The defendants' motion to dismiss was granted by the court below on the ground that the complaint only concerned a political question which was not covered by the due process provisions of the 14th Amendment, since dealing solely with motives of a legislative body in voting upon legislation, and which did not draw into question the equal protection clause, since there was no allegation of discrimination. The court indicated that the issuance of a liquor license was within the discretion of the Mayor and the Board of Aldermen and concluded that a federal court had no jurisdiction to entertain an attack on that process.

■■■ At the outset, we note our disagreement with the district court's classification of the challenged actions as purely those of a legislative body; we do not conceive the denial of an application for a license to be an act of legislation. Although there is disagreement on the matter, see 73 C.J.S. Public Administrative Bodies and Procedure, § 71, at 398, we prefer the view that licensing proper is an adjudicative process. Thus when a municipal or other governmental body grants a license it is an adjudication that the applicant has satisfactorily complied with the prescribed standards for the award of that license. Similarly the denial of a license is based on an adjudication that the applicant has not satisfied those qualifications and requirements. On the other hand, the prescription of standards which must be met to obtain a license is legislation, since these standards are authoritative guides for future conduct derived from an assessment of the needs of the community. A governmental agency entrusted with the licensing power therefore functions as a legislature when it prescribes these standards, but the same agency acts as a judicial body when it makes a determination that a specific applicant has or has not satisfied them.

■■■ Since licensing consists in the determination of factual issues and the application of legal criteria to them—a judicial act—the fundamental requirements of due process are applicable to it. Due process in administrative proceedings of a judicial nature has been said generally to be conformity to fair practices of Anglo-Saxon jurisprudence, see Tadano v. Manney, 160 F.2d 665, 667 (9th Cir. 1947), which is usually equated with adequate notice and a fair hearing, see Opp Cotton Mills v. Administrator, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624 (1941). Although strict adherence to the common-law rules of evidence at the hearing is not required, see Crowell v. Benson, 285 U.S. 22, 48, 52 S.Ct. 285, 76 L.Ed. 598 (1932), the parties must generally be allowed an opportunity to know the claims of the opposing party, Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938), to present evidence to support their contentions, see id. 304 U.S. at 18, 58 S.Ct. at 776, 82 L.Ed. 1129, and to cross-examine witnesses for the other side, Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63 (1949). Thus it is not proper to admit ex parte evidence, given by witnesses not under oath and not subject to cross-examination by the opposing party. Southern Stevedoring Co. v. Voris, 190 F.2d 275 (5th Cir. 1951) ; see Chin Quong Mew ex rel. Chin Bark Keung v. Tillinghast, 30 F.2d 684 (1st Cir. 1929). A fortiori, the deciding authority may not base its decision on evidence which has not been specifically brought before it, United States v. Abilene & So. Ry., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016 (1924) ; the findings must conform to the evidence adduced at the hearing, Tadano v. Manney, 160 F.2d 665 (9th Cir. 1947). Furthermore, the Supreme Court has said that an administrative order "cannot be upheld merely because findings might have been made and considerations disclosed which would justify its order * * *. There must be such a responsible finding." SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Thus where the Secretary of State indicated that passport regulations precluded the issuance of a passport to the applicant in question, but did not specify the applicable subsection or set out the findings on which the conclusion was based, it was held

that factual findings would be required before the Secretary could deny the application. Boudin v. Dulles, 98 U.S.App. D.C. 305, 235 F.2d 532 (1956).

Also, the Supreme Court has held that the arbitrary refusal to grant a license or permit to one group when other groups have obtained permits under similar circumstances constitutes a denial of equal protection of the law. Niemotko v. Maryland, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951) (alternative holding). Although this case raised the problem of freedom of religion, state action and hence, necessarily, the 14th Amendment were involved. The Court concluded that a "completely arbitrary and discriminatory refusal to grant" park permits sought by Jehovah's Witnesses constituted a denial of equal protection of the law where other religious organizations had customarily been allowed to use the park.

■ The appellees here, however, seek to place liquor in a special category, and argue that since Georgia has declared a license to sell spirituous liquor to be a privilege, the licensing authority has an unreviewable discretion to grant or deny licenses. It is firmly established, of course, that the state has the right to regulate or prohibit traffic in intoxicating liquor in the valid exercise of its police power, see Midwest Beverage Co. v. Gates, 61 F.Supp. 688, 690 (N.D.Ind. 1945), but this is something quite different from a right to act arbitrarily and capriciously. Merely calling a liquor license a privilege does not free the municipal authorities from the due process requirements in licensing and allow them to exercise an uncontrolled discretion. There is no suggestion here that Georgia has sought to declare the sale of retail liquor to be a public business which can be franchised by the state and treated as devoted to a public use, as the State of Oklahoma did with cotton ginning, see Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929), and the State of Utah did with mining, see Strickley v. Highland Boy Gold Mining Co., 200 U.S. 527, 26 S.Ct.

301, 50 L.Ed. 581 (1906). To the contrary, the State of Georgia has limited municipalities in the exercise of their authority over liquor businesses to those *reasonable* rules and regulations which fall within their police powers.

■ Next, we note that states do not escape the operation of the 14th Amendment in dealing with intoxicating beverages by reason of the 21st Amendment. Section 2 of that Amendment deals with the transportation or importation of liquors into a state or territory. Thus, although a state may, under the 21st Amendment, discriminate against imports of intoxicating beverages, see State Board of Equalization of California v. Young's Mkt. Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38 (1936), the Amendment does not confer any other powers, see Sancho v. Corona Brewing Corp., 89 F.2d 479 (1st Cir. 1937). "[T]he Twenty-First Amendment did not clothe the State's right to control the sale of liquor with any higher degree than it had over the sale of other commodities within the State." Brown v. Jatros, 55 F.Supp. 542, 544 (E.D.Mich.1944).

■ Neither is the assertion that liquor may be a menace to public health and welfare a sufficient answer to Mrs. Hornsby's allegations. The potential social undesirability of the product may warrant absolutely prohibiting it, or, as the Aldermanic Board has done to some extent here, imposing restrictions to protect the community from its harmful influences. But the dangers do not justify depriving those who deal in liquor, or seek to deal in it, of the customary constitutional safeguards. Indeed, the great social interest in the liquor industry makes an exceptionally strong case for adherence to proper procedures and access to judicial review in licensing the retail sale of liquor. The possibility of high profits on the one hand and the danger of strict governmental limitations on the other hand create a fertile breeding ground for the temptations of graft, corruption, and other abuses of governmental office. If one applicant for a license is preferred over another equally

qualified as a political favor or as the result of a clandestine arrangement, the disappointed applicant is injured, but the injury to the public is much greater. The public has the right to expect its officers to observe prescribed standards and to make adjudications on the basis of merit. The first step toward insuring that these expectations are realized is to require adherence to the standards of due process; absolute and uncontrolled discretion invites abuse. See Francis v. Fitzpatrick, 129 Conn. 619, 30 A.2d 552, 145 A.L.R. 505; Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir. 1947).

The closest case on point we have discovered is Glicker v. Michigan Liquor Control Commission, supra. There an action was brought under the Civil Rights Act for an order requiring the state liquor commission to renew a license which had allegedly been revoked as an intentional and deliberate discrimination motivated by political considerations. The trial court dismissed the complaint for failure to state a cause of action, but the Court of Appeals for the Sixth Circuit reversed, holding that a valid claim was stated under the equal protection clause and the substantive provisions of the Civil Rights Act, 42 U.S.C.A. § 1983. We see no valid distinction between the revocation of a license, as in Glicker, and the denial of an application, as in the case at hand. An applicant for a license has the right to be treated in the same manner as prior, successful applicants are. See Niemotko v. Maryland, supra. Compare Ashbacker Radio Corp. v. Federal Communications Commission, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).

■■■■ We find in this case that Mrs. Hornsby's allegations, if borne out by the evidence, are sufficient to show a violation of her 14th Amendment rights. If her application actually was denied because the delegation from her ward decided, from their own knowledge of the circumstances, that Mrs. Hornsby should not be issued a liquor license, then she was deprived of the hearing which due process requires, since she could not discover the claims of those opposing her and subject their evidence to cross-examination. In addition, Mrs. Hornsby was not afforded an opportunity to know, through reasonable regulations promulgated by the board, of the objective standards which had to be met to obtain a license. Next, the alleged failure of the board to reveal the basis for denying her application would, if true, be a denial of her right to have the board make findings based on the evidence adduced at a hearing. Moreover, appellees themselves indicate that the mandates of equal protection were not observed in the awarding of liquor licenses: "[I]n granting a mere privilege, appellant cites no authority which would prevent the defendants [appellees] from arbitrarily accepting one eligible application while denying others; otherwise they would, of necessity, be forced to grant licenses to every eligible citizen upon application." Brief for Appellees, p. 7. If there are too many qualified applicants, then the proper remedy is for the Board of Aldermen to adopt reasonable rules and regulations which will raise the standards of eligibility or fix limits on the number of licenses which may be issued in an area; the solution is not to make arbitrary selections among those qualified.

■■■ Merely showing a violation of a constitutional right is, however, not sufficient to gain access to the federal courts; since Mrs. Hornsby has not sought to invoke jurisdiction under the federal question provision, 28 U.S.C.A. § 1331, we must determine whether she has alleged an actionable claim under the Civil Rights Act, Revised Stats. § 1979, 42 U.S.C.A. § 1983, within the jurisdiction of the district court, 28 U.S.C.A. § 1343(3). The coverage of the Civil Rights Act has long been the subject of heated controversy. Courts have been reluctant to allow what they consider simple state actions for false imprisonment and assault and battery to be brought in the federal courts as civil rights actions. See Monroe v. Pape, 365 U.S. 167, 240 n. 68, 81 S.Ct. 473, 5 L.Ed.

2d 492 (1961) (opinion of Frankfurter, J.). Also, they have been very strict in requiring that a complaint set forth *facts* showing a denial of the protected rights and not merely "factually unsupported characterizations of the complained of acts of the defendants, as malicious, conspiratorial, and done for the purpose of depriving plaintiffs of their constitutional rights." See McGuire v. Todd, 198 F.2d 60 (5th Cir.), cert. denied, 344 U.S. 835, 73 S.Ct. 44, 97 L.Ed. 649 (1952). Furthermore, at one time various limitations were propounded on the specific rights protected by the statutes—see Agnew v. City of Compton, 239 F.2d 226, 231 (9th Cir. 1956), cert. denied, 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957) (due process apparently not protected absent allegations of discrimination between persons); Ortega v. Ragen, 216 F.2d 561 (7th Cir. 1954), cert. denied, 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955) (no action allowed for denial of equal protection)—on the degree of state action required—see Screws v. United States, 325 U.S. 91, 142, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (dissenting opinion) (civil rights statutes inapplicable where act a violation of state law)—and on the types of discrimination covered—see Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944) (intentional or purposeful discrimination required in equal protection case); Deloach v. Rogers, 268 F.2d 928 (5th Cir. 1959) (only discrimination based on class or race actionable).

The trend of the recent cases, however, has been to accept more and more actions under the civil rights statutes. Thus suits have been allowed for damages for intimidating a prisoner and interfering with his right to counsel, Lewis v. Brautigam, 227 F.2d 124, 55 A.L.R.2d 505 (5th Cir. 1955); for damages resulting from an illegal search and seizure and police brutality, Geach v. Moynahan, 207 F.2d 714 (7th Cir. 1953), Davis v. Turner, 197 F.2d 847 (5th Cir. 1952); for an injunction against enforcement of ordinances regulating the operation of taxicabs, Walton v. City of Atlanta, 181 F.2d 693 (5th Cir.), cert. denied, 340 U.S. 823, 71 S.Ct. 56, 95 L.Ed. 604 (1950) (judgment for defendants on merits); and for damages to one barred from Las Vegas casinos as an undesirable character, Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962). The Supreme Court, in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), gave the ultimate seal of approval to a construction of section 1983 not requiring an allegation of a purpose to discriminate. See Cohen v. Norris, 300 F.2d 24, 29–30 (9th Cir. 1962) (overruling Agnew v. City of Compton, supra, and other cases). Monroe v. Pape upheld a complaint alleging damages from an illegal search and seizure under color of state and municipal statutes, customs and usages but not with any specific intent. Accord, Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961). It is, therefore, now recognized that no specific intent to deprive a plaintiff of his civil rights need be alleged, see Stringer v. Dilger, 313 F.2d 536, 540 (10th Cir. 1963), and that an intentional and purposeful discrimination is necessary only under the act's criminal sections, see Monroe v. Pape, supra, 365 U.S. at 187, 81 S.Ct. at 484, 5 L.Ed.2d 492, or under the conspiracy provisions, see Lewis v. Brautigam, supra, 227 F.2d at 127–28.

Moreover, the case of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), may have relaxed the requirements announced in Snowden v. Hughes, supra, for equal protection cases. Jurisdiction in Baker v. Carr, rested in part on section 1343(3), and the Court expressly upheld jurisdiction. But the gist of the complaint was merely a denial of equal protection through gradual shifts in population, although it was alleged that the original 1901 apportionment was arbitrary and capricious. Hence it is at least doubtful that an allegation of an intentional and purposeful discrimination is necessary to sustain civil rights jurisdiction, even where founded on a denial of equal protection.

Judging Mrs. Hornsby's complaint in the light of the requirements that it set

forth (1) that plaintiff has been denied a protected right, privilege or immunity, and (2) that defendants acted under color of a state or local law, see Stringer v. Dilger, supra, 313 F.2d at 540, Marshall v. Sawyer, supra, 301 F.2d at 646, we find she has set forth an actionable claim within the jurisdiction of the district court. We have already concluded that Mrs. Hornsby alleged denial of her 14th Amendment rights. That this was done under the color of state law is too plain to merit extended discussion. Mrs. Hornsby was denied a liquor license by the Board of Aldermen, acting under the authority of the Ga. Code Ann. §§ 58–1031, 58–103 to pass on the fitness of applicants and issue licenses. Moreover, the Board of Aldermen, functioning as an agency of the state under Ga. Code Ann. § 58–1028, had the right to adopt rules and regulations for liquor businesses, and to determine the location of retail stores.

The proper question to be determined upon the hearing of this case in the district court is not whether the plaintiff below is entitled under the law to a liquor license. The determination of whether she should be granted one is a function of the Aldermanic Board. The role of the courts is to ascertain whether the manner in which this determination was or is made accords with constitutional standards of due process and equal protection. We are of the opinion that the complaint alleged sufficient facts to show that the denial of appellant's application for a license did not meet these standards and, since done under color of state statute, constituted a violation of 42 U.S.C. § 1983.

It follows that the trial court must entertain the suit and determine the truth of the allegations. If it develops that no ascertainable standards have been established by the Board of Aldermen by which an applicant can intelligently seek to qualify for a license, then the court must enjoin the denial of licenses under the prevailing system and until a legal standard is established and pro-cedural due process provided in the liquor store licensing field.

The judgment is reversed.

JONES, Circuit Judge (dissenting):

With some of the Court's opinion I am in disagreement. Some of the Court's opinion I do not understand.

The Court's opinion, as I read it, decides that the refusal to give Mrs. Hornsby a liquor license is not legislative, but adjudicative and therefore judicial. These statements are not essential to the decision and may be misleading in the consideration of some future case.

I see no necessity of extending federal civil rights jurisdiction to the review of state administrative decisions where it is asserted that irreparable injury has resulted from arbitrary action of a state administrative agency in violation of due process and declaratory and injunctive relief is sought. In such cases federal jurisdiction seems to be established without any civil rights controversy. 3 Davis, Administrative Law Treatise 310 et seq. § 23.05.

The Court directs the district court, upon finding that the allegations of the complaint are true, to "enjoin the denial of licenses under the prevailing system and until a legal standard is established and procedural due process provided." This is not a class action, and if the Court is going to prescribe the remedy that the district court shall grant, might it not be just as well to confine the relief to the appellant who seems to be the only person now complaining?

It is not clear to me why the Court does not direct the district court, if it must give directions, to enjoin the issuance or renewal of licenses until standards are established and procedures provided. This sort of a directive would, so I think, be better than the one which the Court has adopted. The order directed by the Court will, I fear, open the door to a flood of applications for licenses, none of which the appellees, under this decision, will be permitted to deny.