James HAAF and Janette Haaf,
Plaintiffs,
v.
BOARD OF COUNTY COMMISSIONERS OF BENTON COUNTY et al.,
Defendants.

James HAAF and Janette Haaf,
Plaintiffs,
v.
Walter LEWANDOWSKI et al.,
Defendants.

James HAAF and Janette Haaf,
Plaintiffs,
v.
John BURNS, Defendant.

Nos. 5-71 Civ. 39, 5-71 Civ. 50 and 5-71 Civ. 54.

United States District Court,
D. Minnesota,
Fifth Division.

Dec. 31, 1971.

Weis & Frauenshuh by Rainer L. Weis, Paynesville, Minn., for plaintiffs.

Gordon Rosenmeier, Little Falls, Minn., for defendants.

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

NEVILLE, District Judge.

Relying on Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964), plaintiffs brought this Civil Rights action under 42 U.S.C. § 1983 claiming a denial of constitutional rights occasioned by the failure of the county officials of Benton County, Minnesota to grant licenses to one or the other of the plaintiffs [1] for the sale of beer and "set-ups" and for the running of a dance hall at their business establishment, the Club Domino. Plaintiffs claim a large financial investment in the Club, which is now standing idle. Supported by oral argument and numerous affidavits, plaintiffs and defendants have made cross motions for summary judgment under Rule 56 of the Fed.R. Civ.P. For the reasons stated below, neither motion will be granted.

The instant controversy began in June of 1970 after 12 minors were arrested at the Club Domino allegedly for illegal possession of beer. Six of the minors later pled guilty, although the motivation for their pleas and plaintiffs' involvement in their alleged possession are the subject of dispute. Apparently in consequence, and on June 4, 1970, the defendant Board of County Commissioners passed two resolutions, one asking the Minnesota Liquor Control Commissioner to refuse approval for a "set up" license (known as a consumption and display license) for plaintiffs' business, the other stating the intention of the Board to refuse to renew plaintiffs' "beer" (non-intoxicating malt liquor) license. The text of the resolutions are set out in the footnote.[2] The licenses for 1970 were in Janette's name. It appears that as a result of the arrest of the minors, plaintiff Janette Haaf was found guilty by a judge of municipal court of the offense of selling beer to minors. An appeal was promptly taken, and the charge ultimately was dismissed in the Minnesota District Court sometime after January, 1971.

From this point, the facts are the subject of heated controversy. Plaintiffs allege that they were requested to apply for the licenses for the Club Domino in the name of James Haaf rather than that of Janette, who had held the license without incident for six years; and that prior to January, 1971, James Haaf properly presented the applications for the beer and set up licenses to the newly elected Sheriff and the County Attorney, defendants Trushenski and Burns, respectively, who arbitrarily, capriciously and wrongfully refused to sign or make a recommendation concerning the application despite their alleged duty to do so under Minn.Stat. § 340.01. Sometime prior to the January 6, 1971 meeting of the Board, plaintiffs obtained the signature of the retiring Sheriff Siemers and the requisite consent of the appropriate Town Board, the latter consent given subject to the recommendation of the County Attorney. County Attorney

---

1. Defendants contend that the original license applications were submitted in the name of James Haaf, rather than Janette, the former licensee. Later when the applications of James were rebuffed she submitted an application on her own behalf. Defendants argue that such fact is legally significant.

2. " . . .
    BE IT HEREBY RESOLVED, That the County Board of Benton County requests that the Liquor Control Commissioner of the State of Minnesota refuse to approve and issue a Consumption & Display license to Janette M. Haaf at the Club Domino located in Minden Township Benton County, Minnesota due to fact that the management of said Club Domino apparently has not exercised due diligence in restricting possession of beer by minors or possession of liquor by minors on said premises. . . .
    BE IT HEREBY RESOLVED, That the County Board of Benton County refuse to approve or renew an 'On or Off' sale Non-intoxicating Malt Liquor license to Janette M. Haaf for calendar year 1971 in the event that said Janette M. Haaf should apply for such a license, nor shall any new applicant be approved for license, while the present management operates and controls the activities at the Club Domino."

Burns was approached a second time on January 4th or 5th, 1971 for his signature on the application but again refused because, according to his affidavit, the new Sheriff had not signed the application. It is not entirely clear to the court but apparently, shortly or sometime thereafter an application or applications were submitted also by Janette Haaf.

The facts surrounding the January 6th meeting are in sharp dispute. In summary, plaintiffs allege that they presented a valid application for the beer and "set up" licenses with the signature and recommendation of former Sheriff Siemers to the Board; that the Board refused to recognize that signature, although other applications with Sheriff Siemers' signature were approved; that defendant County Attorney Burns was present at the meeting and wrongfully refused to recommend either for or against the plaintiffs' application; that plaintiffs were told by the defendants to prepare a new application which plaintiffs did that evening; that upon returning plaintiffs and their attorney were locked out of the meeting; that on being readmitted, the defendants Trushenski and Burns refused again to make recommendations; that the Board refused to consider or act upon the application for either license; and that the denial of the licenses was based on extraneous political considerations.

By affidavit of the County Auditor defendants deny that any valid application was presented at any time and assert that in any case their refusals to sign or to act upon the application was justified under the standards of the statutes based upon the guilty pleas of the minors and the then extant finding of guilty against Janette Haaf in municipal court. See Minn.Stat. §§ 340.01 and 340.02, Subd. 8, set out *infra*.

Apparently, plaintiffs made several later attempts to obtain licenses and fi-nally on April 7, 1971, defendant Burns sent a letter to the plaintiffs, the text of which was as follows:

"The Board of Commissioners of Benton County has requested that I advise you that they do not intend to issue any type of license to you at this time nor at any time in the future."

The instant suit was filed on June 1, 1971.

Although plaintiffs allege denial of rights under the privileges and immunities and equal protection clauses of the Fourteenth Amendment to the United States Constitution, the *Hornsby* case, *supra*, bottoms on the due process clause. Plaintiff cites, and the court has found, no authority for the proposition that the denial of a license by a local government unit constitutes a denial of privileges and immunities under any such clause of the United States Constitution, and therefore, plaintiffs' claims will be treated as alleging only a denial of due process and equal protection of the laws [3] over which this court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

*Plaintiffs' motion for summary judgment* must be denied. The validity of their application for the licenses rests on two separate but related grounds: the factual questions as to whether the Board accepted other applications with the retiring Sheriff's signature, granted other licenses despite a similar criminal conviction of the applicant and otherwise acted arbitrarily, and the legal question as to whether either the Sheriff or the County Attorney had a right to refuse to sign plaintiffs' application or conversely had a duty to sign the application making some recommendation to the Board whether the recommendation was positive or negative. Clearly, the factual disputes at least are not a proper subject for summary judgment. This court does conclude however in interpreting applicable state law that

---

3. The thrust of the oral argument appears to have been addressed to the beer license, but for purposes here the court will treat the case as involving all licenses, though different Minnesota statutes are involved.

the sheriff and county attorney were under an obligation under the Minnesota Statutes to prepare written recommendations either for or against the granting of the licenses and to sign the applications accordingly before presentation to the Board. Ultimately it is the Board in whom resides the power to grant or deny the license and to hold to the contrary that the Board could not or should not consider the applications unless or until approved affirmatively by the Sheriff and County Attorney would be to vest in them the power to grant or withhold licenses. Such is not the purport of the statutes.

Plaintiffs further argue that the Board acted upon inadequate standards found in the state statutes, particularly those authorizing local governments to issue beer licenses. The applicable statutes are, in pertinent part, as follows:

Minn.Stat. § 340.01 relating to Non-Intoxicating Malt Liquor licenses:

"... Before issuing or renewing any license, the county board shall consider [1] the recommendation of the sheriff and [2] the county attorney, [3] the character and [4] reputation of the applicant, [5] the nature of the business to be conducted, [6] and the type of premises and [7] propriety of the location of said business.

[8] No license shall be issued or renewed if the applicant within a period of five years prior to the date of such application has been convicted of violating any law relating to the sale of non-intoxicating malt liquor or of intoxicating liquor."

Minn.Stat. § 340.02, Subd. 8 specifies persons eligible:

"Licenses hereunder shall be issued only to [9] persons who are citizens of the United States and who are of [10] good moral character and repute, [11] who have attained the age of 21 years and [12] who are proprietors of the establishments for which the licenses are issued." [enumeration added] [4]

■ The later Fifth Circuit case of Atlanta Bowling Center v. Allen, 389 F. 2d 713 (1968), which elucidates the *Hornsby* case, *supra*, suggests that summary judgment for the plaintiff would be inappropriate in this case. There the court upheld a city ordinance containing standards as broad as those in the Minnesota statute.[5] Certainly the standard denying licenses to applicants who have been convicted of alcoholic beverage law violations within the preceding five years is clear enough, and defendants allege that they acted on the basis of the then extant finding of guilty in municipal court. Assuming *arguendo* that defendants' reliance on a conviction not final under state statute was misplaced, the standard itself does not thereby fall because constitutionally infirm.

*Defendants' motion for summary judgment* presents difficult problems related to the role of the federal courts in an area where state and local government have traditionally exercised nearly unfettered discretion.

■ The following quotations from *Atlanta Bowling Center, supra*, are apt:

"[Hornsby] . . . is far from a holding that the Federal Courts

---

4. The standard numbered by this court as [10] appear to be redundant with those numbered [3] and [4].

5. The pertinent provisions of the Atlanta City ordinance read:
"In determining whether or not any license applied for hereunder shall be granted, the following shall be considered in the public interest and welfare:
. . . .

(d) Location. The location for which the license is sought as to traffic congestion, general character of neighborhood and the effect such an establishment would have on the adjacent and surrounding property values."
Section 5-97 of Vol. II of the 1965 Code of Ordinances of the City of Atlanta.

sit as a super liquor board or a sort of extra-hierarchial appellate court in the stream of state jurisprudence to review non-constitutional errors of substance or procedure made by state licensing agencies.

.    .    .    .    .    .

In the setting of this case the ordinance put the applicant on fair notice. This reading of the ordinance takes into account the fact that the traditional local interest in regulating the liquor business calls for the use of broad discretion and flexible procedures."

It is noted that the Board of Commissioners is a proper defendant in the case insofar as injunctive or mandatory relief is sought. Although Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960), held that municipalities are not "persons" within the meaning of 42 U.S.C. § 1983, numerous later cases have held that Monroe's holding to that effect is limited to the assessment of damages at least where constitutional rights are violated. See *e. g.*, Crews v. Undercofler, 249 F.Supp. 13 (D.Ga.1966), aff'd 371 F.2d 534 (5th Cir. 1967); Harkless v. Sweeney Ind. School District, 427 F.2d 319 (5th Cir. 1970); and see cases in note 380 in the annotation to 42 U.S.C.A. § 1983 (1971 Supp., p. 57). Units of state and local government are subject to injunction and declaration of rights however, and properly so. In this case it is only the Board which can grant or deny the licenses or can insure that due process requirements are met in the County's decision making.[6]

In consideration of defendants' motion, several questions involving interpretation of state law are present which this court may have to decide ultimately incidental to a decision of constitutional issues presented. For example, whether the signatures and recommendations of the sheriff and county attorney are discretionary acts is a question of state law. The same is true as to the impact of the municipal court conviction of Janette and the minors, and the content and application of the standards regarding character and reputation to the facts of a particular case. There is, peculiarly enough, a paucity of Minnesota case law on these subjects, the bulk of the interpretations of Minn.Stat. § 340.01 et seq., consisting of opinions of various Attorneys General. The Minnesota case which might have been most directly in point, was dismissed as moot without consideration of the merits. Scoles v. Hurd, 275 Minn. 569, 148 N.W.2d 164 (1967).

For the reasons presented in the foregoing paragraph, the court has given careful consideration to the propriety of abstention in the case at bar but has concluded that such is not necessarily appropriate or required here, and also that summary judgment must be denied the defendants. Even as later qualified, Hornsby stands clearly for the proposition,

"that state licensing of activities even so traditionally amenable to the widest discretion as the liquor business is subject to the minimal demands of the Fourteenth Amendment's due process and equal protection requirements. .   .   . "

*Atlanta Bowling Center, supra,* 389 F.2d at 715–716. In addition to adequate standards, *Hornsby* imposes upon liquor licensing authorities the requirements of notice, fair hearing, opportunities to present evidence, cross-examination, and findings.[7]

---

6. This court has previously enjoined another public agency in the case of Olson v. Regents of University of Minnesota, 301 F.Supp. 1356 (D.Minn.1969).

7. The court notes that a constitutional requirement of minimally fair procedures in public and quasi-public processes has been found by increasing numbers of courts in numerous administrative areas where nearly absolute discretion previously held way. Examples include university discipline Dixon v. Alabama State Bd. of Ed., 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L. Ed.2d 193 (1961); welfare benefits Gold-

■ Such a hearing is required to test hearsay statements and other matters allegedly considered by the Board and as to the impact of and effect given the guilty pleas of the minors, Janette's conviction and inferences regarding the plaintiffs that might have been drawn therefrom. In the case at bar, if the plaintiffs' factual allegations be correct, it is possible there may be under *Hornsby* a denial of due process. *Hornsby* holds—and the same would seem to be good law—that, if the refusal was clearly arbitrary and capricious or as claimed here based purely upon political considerations—both factual issues—a cause of action is established under 42 U.S.C. § 1983. 326 F.2d at 610. Further, another possible constitutional violation exists if, as plaintiffs allege, licenses were granted to others based on the recommendation of the retiring sheriff, and no other valid ground for denial was relied upon in the case at bar or if licenses were granted to others who had similar criminal convictions and not to plaintiffs.

■ Apart from the above if plaintiffs be correct, there was inadequate or no notice, no fair hearing, reliance by the Board on unverified rumor, a lack of findings by the Board and proceedings were had on incorrect interpretations of the statutory standards.[8] With the exception of the two resolutions of June, 1970 and the letter from defendant Burns of April, 1971, the record now before the court is devoid of official documents or any recordation of actions or reasons therefor. It seems fairly obvious that there was no hearing before and in connection with the June resolutions, and no right to present witnesses or cross-examine accorded plaintiffs at any time. Plaintiffs, having adequately alleged violations of "the minimal demands of the Fourteenth Amendment," have a right under 42 U.S.C. § 1983 to have their claims heard and decided in federal court; and to the extent necessary, this court has power to determine incidental questions of state law.

■ Much of the above is of course hypothetical, the court having heard no evidence to date and what is above said is with this *caveat*. It is emphasized that it is not the function of federal courts to make decisions on the merits as to the granting or the denying of particular license applications, but only to supervise the process and result in terms of constitutional requirements. If plaintiffs carry their burden at trial and establish a denial of constitutional rights, however, the court must consider

berg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1960); public housing eviction Escalera v. New York City Housing Auth., 425 F.2d 853 (2d Cir. 1970); and Maeberry v. Housing and Redevelopment Auth. of Duluth, et al., 5–71 Civ. 65 (D.Minn. August 27, 1971, J. Neville); public employment Birnbaum v. Trussel, 371 F.2d 672 (2d Cir. 1966) and Olson v. Regents of Univ. of Minn., 301 F. Supp. 1356 (D.Minn.1969); and theater licensing Jodbor Cinema, Ltd. v. Sedita, 309 F.Supp. 868, 877–878 (W.D.N.Y. 1970).

There are, of course, additional cases arising under § 1983 in accord with Hornsby's insistence on due process in liquor licensing. Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir. 1947) (equal protection clause applies to liquor licensing); Lewis v. City of Grand Rapids, 356 F.2d 276 (6th Cir. 1966) (finding of discrimination in

denial of license held clearly erroneous); Barnes v. Merrit, 376 F.2d 8 (5th Cir. 1967) (complaint alleging lack of standards in licensing ordinance held sufficient); and *Atlanta Bowling Center*, discussed in text *supra*.

8. In Minnesota, persons found guilty of many offenses cognizable in municipal court without a jury have a statutory right to appeal in the district court; the appeal consists of a trial *de novo* with a right to jury trial. Arguably, no penalties attach to the finding of guilty in the inferior court if appeal is timely made; thus there would be no "conviction" within the terms of Minn.Stat. § 340.01 until the proceedings in the district court are complete. See *e. g.*, Minn.Stat. §§ 488.20, 488A.10. This point was neither briefed nor argued at any length and the court indicates no conclusion on this issue at this time.

the propriety of injunctive action as well as damages against the individual defendants and any other legal or equitable remedies that may be suggested.

Defendants have proposed an argument on the motions and in affidavits that they stand ready to grant plaintiffs a full and fair evidentiary hearing on the merits of their application or applications. The court ·views this suggestion with approval. Therefore,

It is ordered That within 60 days hereof or within such further time as the parties may stipulate, the County Board of Benton County together with the other defendants, shall hold and accord plaintiffs a full evidentiary hearing, with right to plaintiffs to appear, produce witnesses and evidence, cross examine witnesses called by the Board and to inquire of and examine the County Attorney and the Sheriff, County Auditor and/or members of the Town Board in which the Club Domino is situate. A record of the proceedings shall be kept, findings of fact shall be made, and plaintiffs and their counsel shall attend and participate in such a hearing.

It is further ordered That the parties' cross motions for summary judgment shall be and the same hereby are denied for the reasons set forth above, and the placing of the case on the active trial calendar of this court, if such becomes necessary, including the prayer in plaintiffs' complaint for an award of damages as well as for permanent relief be and hereby is postponed until the completion of the aforementioned hearing, or 90 days from date hereof, whichever is the sooner.

It is further ordered That since licenses are annual and those for 1971 here are involved and the question as to their issuance might be deemed moot, the court intends and so orders that the procedure outlined above shall apply equally to any applications for 1972 or any future such licenses.