**VALIANT STEEL AND EQUIPMENT, INC., Plaintiff,**

v.

**Neil GOLDSCHMIDT et al., Defendants.**

Civ. A. No. 80–1880.

United States District Court, District of Columbia.

Oct. 17, 1980.

Cathy Carlson Moran, Washington, D. C., for plaintiff.

Robert C. Seldon, Asst. U. S. Atty., Washington, D. C., for defendants.

## OPINION

HAROLD H. GREENE, District Judge.

This is a case in which plaintiff, Valiant Steel and Equipment, Inc., seeks a preliminary injunction to restrain the defendant Secretary of Transportation and defendant Federal Highway Administrator from enforcing "interim" regulations promulgated under § 401 of the Surface Transportation Assistance Act of 1978, P.L. No. 95–599, 92 Stat. 2689 (the "Act"), the so-called "Buy America" provisions relating to federally-financed transportation projects.

Plaintiff asserts that the regulations contained in 23 C.F.R. § 635.410, promulgated eleven days after enactment of the Act, were issued in violation of the Administrative Procedure Act, 5 U.S.C. § 553, which requires, with some exceptions, that notice and opportunity for public comment precede agency rulemaking. It further maintains that the regulations, even if validly issued under the "good cause" exception of

1. There is also a fourth exception in the statute, concerning the acquisition of rolling stock. This exception is irrelevant to this lawsuit, be-

§ 553(b)(B), cannot be upheld as "emergency regulations" over twenty–two months later. Finally, plaintiff claims that the regulations are inconsistent with the Act and beyond the authority of the defendants.

Subsection (a) of section 401 mandates that no federal funds be expended on any highway project whose cost exceeds $500,-000 unless all materials used in the project are of domestic origin. However, subsection (b) goes on to state that the proscription on foreign materials "shall not apply where the Secretary determines" that the ban would be inconsistent with the public interest; sufficient domestic materials are not available; or the use of domestic materials would increase the cost of the project by more than ten percent. The regulations include only the last of these exceptions.[1]

## I

■ In order to deal with plaintiff's claims the Court must determine first whether, in view of the partially discretionary nature of the subsection (b) provisions, agency regulations are at all required to be issued. On the basis of applicable precedent, it is clear that the answer must be in the affirmative.

As early as in *Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1946), the Supreme Court stated (332 U.S. at 202, 67 S.Ct. at 1580), that the

function of filling in the interstices of the Act should be performed, as much as possible, through the quasi–legislative promulgation of rules to be applied in the future.

Since then, and especially in the last decade, courts have with increasing frequency required agencies to limit their discretion by promulgating rules. Thus, the Court of Appeals for this Circuit held in the leading case of *Environmental Defense Fund v. Ruckelshaus*, 439 F.2d 584, 598 (D.C.Cir. 1971) (citations omitted):

cause rolling stock is not used in highway projects.

Courts should require administrative officers to articulate the standards and principles that govern their discretionary decisions in as much detail as possible. Rules and regulations should be freely formulated by administrators, and revised when necessary.

As Professor Davis has stated

When standards are lacking to guide the exercise of discretionary power in individual cases, courts should in appropriate circumstances require administrative rulemaking to provide the standards, the guides, the rules, the limits and the procedures. The movement during the 1970s toward judicially required administrative rulemaking has been a strong one.

K. Davis, *Administrative Law Treatise*, 2d ed. § 3:15, at 214.[2]

The Act here involved states that the ban on foreign materials *"shall* not apply where the Secretary determines" that any of several conditions holds, and it thus vests far narrower discretionary authority in the agency than in the typical situations where regulations have been required.[3] More specifically, the Secretary must grant a waiver when he makes a determination that certain conditions exist, and it could hardly be argued that he could evade that responsibility simply by never making any determinations with respect to subject matter encompassed by the exceptions enumerated in subsection (b). Thus, there can be no doubt that regulations must be promulgated to implement the statutory mandate.[4]

II

The Administrative Procedure Act provides with respect to its procedural requirements for rule-making that notice and comment need not be provided (section 553(b)(B)),

when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

According to the Senate Committee Report, the impracticability exception applies whenever "the due and required execution of the agency functions would be prevented by its undertaking public rule-making proceedings." S.Doc. No. 248, 79th Cong., 2d Sess., 258 (1946). As the Court of Appeals for the Seventh Circuit observed recently, "Congress intended this exemption to operate when the regular course of rulemaking procedure would interfere with the agency's ability to perform its functions within the time constraints imposed by Congress." *U.S. Steel Corp. v. Environmental Protection Agency*, 605 F.2d 283, 287 (7th Cir. 1979).

■ In the instant case, Congress enacted a law, effective immediately, prohibiting the commitment of federal funds under certain conditions. Within eleven days defendants promulgated regulations to enforce the new provision in order expeditiously to bring federal highway assistance programs in line with Congress' mandate.[5]

---

**2.** Professor Davis went on to define this court-required rulemaking doctrine as the requirement that administrators "do what they reasonably can do to develop and to make known the needed confinements of their discretionary power through standards, principles, and rules." *Id.* at 214–15.

**3.** For example, in *Hornsby v. Allen*, 326 F.2d 605, 612 (5th Cir. 1964), in which plaintiff challenged the denial of an application for a retail liquor license, the Court of Appeals for the Fifth Circuit instructed the trial court that

If it develops that no ascertainable standards have been established by the Board of Aldermen by which an applicant can intelligently seek to qualify for a license, then the court must enjoin the denial of licenses under the

prevailing system and until a legal standard is established and procedural due process provided in the liquor store licensing field.

**4.** Indeed, by issuing emergency regulations the Secretary has in effect conceded that the Act cannot be enforced without regulations.

**5.** The preamble to the regulations states that the Administrator determined that it was necessary and consistent with the public interest to issue an emergency regulation to allow the highway funding program to continue, consistent with the Buy America provisions, "without incurring undue delay while awaiting the formulation of implementing regulations." 43 FR 53717 (Nov. 17, 1978).

In view of the need for speedy action, it was appropriate to issue temporary regulations without proceeding by way of the time-·consuming, ordinary rule–making process. Therefore, the Court finds that the regulations were validly issued under section 553(b)(B).

Over twenty–two months have passed, however, since that time. In that period, defendants have taken no action to bring their regulations into accord with the procedural strictures of the APA. A docket for public comment on the regulations was opened for the sixty days following promulgation by the Administrator. Since then, the Secretary has failed to meet four different deadlines he published in the Federal Register for final action on these regulations. Although counsel assured the Court in oral argument that "staff are working on the regulations" and that "drafts are being exchanged," and although a subsequent affidavit of the Assistant General Counsel of the Department of Transportation indicates that a final draft of the regulatory analysis became available coincidentally the day after oral argument, defendants remain extremely vague on details, and they appear unable or unwilling to indicate why final regulations have not been issued or when they anticipate such regulations will be issued.

Counsel has referred·the Court to the possibility of forthcoming congressional action to amend the Act and to foreign trade negotiations with sensitive international political implications, and it seems fair to conclude that defendants have not issued regulations for reasons related to these and similar considerations. It is possible that domestic industries, in particular the steel industry, deserve more protection than the level established by Congress. Perhaps the exceptions provided in the Act were improvidently granted. It may be that Congress is on the verge of amending the statute. These considerations, however, are irrelevant to the defendants' duty to enforce the law as it was enacted by the Congress.

Defendants may have some discretion in their interpretation of the meaning of the public interest exception. But they do not have discretion simply to excise that and the other exceptions from the statute by failing and refusing to issue regulations which would implement them. See Part I *supra.*

If meaning is to be given to the procedural requirements for rule–making, defendants cannot be allowed to continue to rely indefinitely on an emergency which at this date is almost two years old. As Justice Powell has said,

> Summary action is justified by the need to prevent imminent and severe public harm, harm that could not be avoided were action delayed. . . . But the justification for summary action ends with the emergency·that called it forth.

*Interstate Commerce Commission v. Oregon Pacific Industries*, 420 U.S. 184, 192–93, 95 S.Ct. 909, 914-·915, 43 L.Ed.2d 121 (Powell, J., concurring); cf. *United States v. Vail*, 252 F.Supp. 823 (S.D.Ohio 1966).

### III

The content of the emergency regulations is as perplexing as is defendants' delay in promulgating final regulations. Section 401(b) of the Act states unambiguously that the Buy America provisions of the Act shall not apply where the Secretary determines that any of several conditions holds. The emergency regulations incorporate only one of these exemptions, the cost differential provision, and they ignore entirely the exceptions Congress stipulated to allow for domestic unavailability or other public ·interest considerations. When asked why these exceptions.were not incorporated in the regulations, counsel repeatedly referred to a fourth exception, which all parties agree is irrelevant to this case (see note 1 *supra*), and he further responded that plaintiff was free to apply for the exceptions absent from the regulations by writing a letter to defendants.[6]

---

**6.** The affidavit submitted by defendants after argument reiterates that they "are prepared to receive, consider, and, when appropriate, to grant 'waivers' " under subsection (b) of sec-

■ The purpose of regulations is to implement the statutes enacted by Congress. There appears to be no rational reason to issue regulations to implement one statutory exception and to relegate plaintiff and other similarly situated individuals to "write a letter" to apply under two other exceptions in the Act.[7] In the absence of regulations, it is not clear to whom a letter should be written, what information or argument should be contained in such a letter, what criteria would govern defendants' decision on such an application, or how such a decision would be subject to administrative and judicial review.[8] The Administrative Procedure Act was designed precisely to prevent such capricious enforcement of the laws.

## IV

■ Defendants have warned of the serious consequences that would result if the regulations were struck down with nothing to replace them. Their claim in that regard is not frivolous, and it is supported by the Court's finding that "good cause" existed in November, 1978, for issuance of the regulations without notice or comment. As they correctly point out, "[i]f an injunction were issued restraining the continued use of the regulation, the Administrator would be forced either to stop awarding the federal–

aid highway funds or to waive the requirements" of the Buy America Act with respect to all highway projects.[9] On the equities, it is also worthy of note that plaintiff did wait over eighteen months before filing suit.

For these reasons, in the exercise of its equitable powers, the Court will not invalidate defendants' emergency regulations effective immediately but will afford them an opportunity to issue regulations consistent with the Act. However, the promulgation of final regulations simply cannot continue on the indefinite course it has to date, but must proceed expeditiously and be completed shortly. The Court has heard nothing causing it to believe that this cannot be done. The Urban Mass Transit Administration (UMTA) expeditiously promulgated regulations under the identical provision of the Act. See 49 C.F.R. Part 660. These regulations do not appear significantly less complex than those required of defendants.[10]

It is also clear that defendants' assurances that the drafting of final regulations is proceeding as quickly as possible are too vague to be adequate.[11]

For the reasons stated, defendants are being ordered, effective November 17, 1980, that is, thirty days from this date, to cease enforcing the emergency regulations and to

tion 401 of the Act. One waiver apparently granted the City of Seattle, Washington, this month is cited in the affidavit to buttress this contention.

7. Even on an emergency basis, defendants could have issued regulations which substantively incorporated the exceptions in the statute and which established some procedure for applying for the exceptions.

8. Plaintiff points out additionally that it may not even be eligible on its own behalf to petition for an exception, because it is not a potential grantee. Only direct recipients of federal funds, such as state highway departments, are grantees. Urban Mass Transit Administration regulations under the identical statutory provision state explicitly that only grantees may request waivers and that bidders, such as plain-

tiffs, must apply for a waiver through a grantee. See 49 C.F.R. § 660.31.

9. Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction 13–14.

10. Counsel conceded in argument that there was "not much to" waiver provisions.

11. Plaintiff appears to have lost a substantial amount of revenue since the enactment of the Buy America provision, and it has no remedy for such losses, even if it were determined that they resulted from illegal action on the part of defendants. This absence of a compensatory damage remedy means that, should plaintiff prevail on the merits, it will be entitled to no relief for additional losses sustained until that disposition. Therefore, plaintiff is currently suffering irreparable harm, for which it has no adequate remedy at law.

issue valid regulations instead.[12] To the extent that the notice and comment period for informal rule–making under the Administrative Procedure Act cannot be met, defendants are required within that period to issue temporary regulations which conform to the requirements of this opinion. During the same thirty–day period, defendants must initiate final rule–making proceedings.

**12.** See Part I *supra*; *Pyramid Lake v. Morton*, 354 F.Supp. 252 (D.D.C.1973).