**L. L. McGUIRE, Appellant,**

v.

**Jerry SADLER, Land Commissioner, et al., Appellees.**

**No. 20736.**

United States Court of Appeals Fifth Circuit.

Oct. 19, 1964.

L. L. McGuire, Midlothian, Tex., for appellant.

Glenn R. Lewis, Lewis, Blanks, Thigpin, Logan & Steib, San Angelo, Tex., for defendant M. D. Bryant.

J. Milton Richardson, Asst. Atty. Gen. of Texas, Waggoner Carr, Atty. Gen., J. S. Bracewell, Asst. Atty. Gen., Austin, Tex., for appellee Jerry Sadler, Com'r of General Land Office.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The district court dismissed this case for want of jurisdiction. We reverse.

L. L. McGuire, the plaintiff-appellant, brought suit in proper person against Jerry Sadler, the Land Commissioner of Texas, and a number of other defendants. In a 27-page complaint McGuire alleged that he is the owner of certain land in Presidio County that the Commissioner, under color of law, is about to sell as part of a conspiracy to deprive him of his land and to deprive others similarly situated of their land because of newly found mineral potential in the county.

Presidio County is on the Rio Grande River in a sparsely developed region in southwest Texas. The surveys of the area are old and of questionable reliability. Texas law provides that any vacant land never sold by the State belongs to the Texas School Fund.

Under Texas Civil Statutes (Vernon's 1948), Art. 5421c, any person interested in purchasing unsurveyed, vacant School Fund land may apply to the Land Commissioner for purchase of the land. The law requires the Land Commissioner to appoint a surveyor to survey the land and to give public notice to all interested parties, including the owners of the abutting land. If, after a public showing of the survey for a statutory period and after a public hearing, the Land Commissioner should determine that the land is not privately owned, the applicant may purchase the land at a price set in accordance with the statute. Any party aggrieved by the proceedings before the Land Commissioner may file suit, in accordance with Art. 5421c, § 6(j), in the Texas District Court for the county in which the land is located. In such a suit the Attorney General intervenes for the State and any final judgment is binding upon the State.

According to the complaint, M. D. Bryant, a member of the alleged conspiracy, filed three applications to purchase vacant School Fund land in Presidio County. The plaintiff alleges that Sadler, the Commissioner, knew of the plot to defraud the plaintiff and hired one Perry Thompson a professional surveyor, for the purpose of preparing a fraudulent survey based on "spurious monuments". This survey, so the plaintiff says, changes many boundaries, diminishes the size of the plaintiff's holdings, and leaves him with the least desirable part of what he originally owned. At the hearing, over the plaintiff's objections, the Commissioner determined that the land in question was indeed Texas School Fund Land. Accordingly, the Commissioner sold some of it to Bryant and his co-conspirators. The plaintiff chose not to follow his statutory remedy in the Texas courts. Instead, he filed this suit praying for rescission of the original sales and for an injunction against the sale of land within the Thompson survey. The plaintiff cast the suit in the form of a class action brought on behalf of all of the absentee owners in

Presidio County similarly deprived of their property as a result of this allegedly fraudulent survey.

The standards generally applicable to notice pleading require little specificity for a complaint filed in the federal court, except that a claim based on fraud must be supported by specific allegations. Although the pleading here is inartistic, long-winded and, in some of the paragraphs, vague, we cannot say that the complaint must be dismissed for failure of the plaintiff to allege his claim with sufficient precision. Taking the complaint as a whole, at least four issues of fact emerge: (1) was the Thompson survey incorrect? (2) was the survey purposefully false? (3) was the action of the Land Commissioner fraudulent or in bad faith? and (4) were there procedural improprieties in the hearing before the Commissioner that deprived the plaintiff of a fair opportunity to protect his property? If we accept as true the allegations of the complaint with respect to these issues, the district court had jurisdiction of the matter in controversy as one that "arises under the Constitution, laws, or treaties of the United States". 28 U.S.C.A. § 1331. Under 42 U.S.C.A. § 1983, the court had jurisdiction by virtue of 28 U.S.C.A. § 1343(3). Hornsby v. Allen, 5 Cir. 1964, 326 F.2d 605. The relief requested rests in the general equity powers of the Federal judiciary. Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743; 3 Davis, Administrative Law Treatise 310 et seq. § 23.05.

It must be said that this case has many of the aspects of a local boundary dispute. The plaintiff, however, presents a claim of impairment of contract under

Article 1, Section 10 of the United States Constitution.[1] The plaintiff asserts that the state action of selling what is rightfully his land to Bryant and his co-conspirators is an impairment of the contract implicit in the original grant of the land from the state to his predecessors in interest, through whom he claims. The legal basis for this contention stretches back to Fletcher v. Peck, 1810, 6 Cranch, 87, 10 U.S. 87, 3 L.Ed. 162, in which John Marshall dissected a land grant and concluded that, although it was an executed contract (a conveyance), it was also a contract carrying with it certain continuing executory obligations, including the grantor's obligation not to claim again the thing granted. Justice Marshall said:

"A contract is a compact between two or more parties and is either executory or executed. An executory contract is one in which a party binds himself to do, or not to do, a particular thing; such was the law under which the conveyance was made by the governor. A contract executed is one in which the object of contract is performed; and this, says Blackstone, differs in nothing from a grant. A contract executed, as well as one which is executory, contains obligations binding on the parties. A grant, in its own nature, amounts to an extinguishment of the right of the grantor, and implies a contract not to reassert that right. A party is, therefore, always estopped by his own grant." 6 Cranch at 136–137.

The vitality of Section 10 has faded,[2] but in the restricted area of state land grants the section still has some vigor left.[3] The unconstitutionality of

---

1. Article 1, Section 10.
   "No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."

2. "[T]he clause nowadays no longer interferes with the power of the States to

protect the public health, safety, and morals, or even that larger interest which is called the 'general welfare', for the simple reason that a State has no right to bargain away this power." Corwin, The Constitution and What it Means Today 82 (1954).

3. See Note, The Contract Clause of the Federal Constitution, 32 Col.L.Rev. 476 (1932); Hale, The Supreme Court and the Contract Clause, 57 Harv.L.Rev. 512, 621 (1944).

state action which grants land to one party and then attempts to grant the same land to another, was reasserted in 1873 in Davis v. Gray, 1873, 16 Wall. 203, 83 U.S. 203, 21 L.Ed. 447 and in 1941 in Wood v. Lovett, 1941, 313 U.S. 362, 61 S.Ct. 983, 85 L.Ed. 1404. If the Land Commissioner caused the State to sell land properly within the original patent through which the plaintiff claims, such action would seem to fit within the constitutional proscription. Under Fletcher v. Peck a land grant carries the obligation on the part of the State, as on the part of any other grantor, not to repudiate a valid conveyance.

▇▇ Quite apart from the question of impairment of contract, the plaintiff's Fourteenth Amendment claim stands on its own feet. There is no question that there was state action for the purpose of invoking the Fourteenth Amendment. Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Hornsby v. Allen, 5 Cir. 1964, 326 F.2d 605. And there is deprivation of property—if we accept plaintiff's allegations. The fraud of the Commissioner, if a fact, would be enough to require the nullification of his findings and subsequent action. In addition, the plaintiff alleges various procedural shortcomings in the state proceedings. He alleges that he was denied the time and access to information needed in order to defend his interest; that the Commissioner and the co-conspirators used various unfair stratagems during the hearing in order to prevent his being heard; that the Commissioner was present at the hearing for only a few minutes, which resulted in a clerk's (the Chief Clerk's) conducting the hearing. If such procedural shortcomings are found to have existed and if indeed they deprived the plaintiff of a fair and adequate hearing, these findings would seem sufficient for a showing of a Fourteenth Amendment violation.

▇ The plaintiff also invokes the equal protection clause of the Fourteenth Amendment. He employs the words "fraudulent" and "wilful" not just opprobriously but to show allegedly purposeful discrimination. The allegations of fraudulent and discriminatory official action are made with specificity so as to bring the plaintiff within even the conservative definition of equal protection announced in Snowden v. Hughes, 1944, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497. See also Hornsby v. Allen, 5 Cir. 1964, 326 F.2d 605.

▇ It is not clear that the plaintiff has an effective alternative remedy in the state courts of Texas, and as a matter of law the existence of such an alternative provides no basis for denying jurisdiction. Home Telephone & Telegraph Co. v. City of Los Angeles, 1913, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510; Lane v. Wilson, 1939, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281; Monroe v. Pape, supra. Nor can this action be barred under the Eleventh Amendment as a suit against the state. By a wholesome fiction, a credit to fictions that Bentham would have endorsed, a suit against a state officer for injunctive relief is regarded as a private suit, if the threatened action constitutes a deprivation of the plaintiff's basic federal constitutional rights. Ex Parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714; Georgia R. R. & Banking Co. v. Redwine, 1952, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335.

▇ The plaintiff has made sweeping statements on the constitutionality of Art. 5421c. In substance, however, he attacks only the application of the statute to the facts in question. In these circumstances, a three-judge Federal court need not be convened. Phillips v. United States, 1941, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800.

The loosely drawn complaint filed in this case contains shocking charges that may be difficult for the plaintiff to substantiate before a fact finder. The plaintiff's answers to interrogatories indicate that he is not possessed of a great quantity of fortifying evidence. Nevertheless, if we accept as true the allegations of the complaint, the district court has jurisdiction, and the plaintiff is entitled to his day in Federal court.

We reverse.