William C. **KITCHEN**

v.

James M. **CRAWFORD**, Chairman of Atlanta-Fulton County Joint Zoning Board.

Civ. A. No. 13356.

United States District Court, N. D. Georgia, Atlanta Division.

June 29, 1970.

G. Seals Aiken, John L. Respess, Jr., Atlanta, Ga., for plaintiff.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for Joe and Lois Chambers, Shiflett, Ristau & Watts.

Harold T. Sheats and John Tye Ferguson, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

The County Commissioners of Fulton County, Georgia, have refused to issue plaintiff a zoning permit for a trailer park in an area zoned for agriculture. Furthermore, they have initiated prosecution of plaintiff pursuant to Ga.Laws, 1952, p. 2689, on the grounds that plaintiff installed a trailer on his land in violation of the 1965 amendment to the 1955 Fulton County Zoning Resolution. Plaintiff alleges jurisdiction in this court under 28 U.S.C.A. § 1343(3). He claims damages under 42 U.S.C.A. §§ 1983 and 1985(2), (3); he also requests declaratory and injunctive relief because the above-mentioned law and resolution allegedly violate the Federal and Georgia Constitutions. The details are set out below as they become relevant.

■ By amendment to his complaint, plaintiff requested a three-judge court as provided for by 28 U.S.C. § 2281. The statute challenged by plaintiff (Ga. Laws 1952, p. 2689) is not a statute of general application throughout the State. Consequently, a three-judge court cannot properly be convened. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

Plaintiff alleges jurisdiction under 28 U.S.C. § 1343(1), (2) and (3) and grounds his claim of jurisdiction under 28 U.S.C. § 1343(3) on his claim for damages and injunctive relief under 42 U.S.

C. § 1983 and his claim for declaratory relief under 28 U.S.C. § 2201. The gravamen of these claims is that the state zoning statute and county zoning resolutions pursuant to which plaintiff's requested permit was refused deny plaintiff equal protection of the law and due process of law as guaranteed by the Fourteenth Amendment. In addition, plaintiff alleges that the arbitrary action of the county officials in denying the zoning permit also infringes plaintiff's Fourteenth Amendment rights.

Plaintiff's alleged basis for jurisdiction under § 1343(3) is somewhat questionable because of Justice Stone's statement, concurring in Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), that a district court had jurisdiction under 28 U.S.C. § 41(14) [now 28 U.S.C. § 1343(3)] of cases where plaintiffs alleged the infringement of a constitutional right "whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights. * * " 307 U.S. at 531, 59 S.Ct. at 971. This statement has served as the basis for courts concluding, especially in cases challenging state taxation laws, that 28 U.S. C. § 1343(3) does not give jurisdiction in cases where the underlying right is capable of valuation. See, e. g., Bussie v. Long, 383 F.2d 766 (5th Cir. 1967); Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo.1962) (three-judge), aff'd. 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963). Though the taxation cases do involve rights that are particularly capable of valuation, the property rights-civil rights distinction is not applied with comparable facility in all cases. As one note-writer has observed, the application of the civil rights-property rights distinction might be awkward in the case of a professional speaker who contends his right to free speech was violated, or a person who claims he is the victim of a discriminatory hiring practice. Note, The "Property Rights" Exception to Civil Rights Jurisdiction—Confusion Compounded, 43 N.Y.U.L.Rev. 1208 (1968). Indeed in Hague Justice Stone specifical-

ly acknowledged Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915), in which the Court sustained the district court's jurisdiction of an alien's claim that an Arizona law limiting the employment of aliens, denied complainant equal protection of the law. Though this complaint could arguably be valued, Justice Stone said, "[T]he gist of the cause of action was not damage or injury to property, but unconstitutional infringement of a right of personal liberty not susceptible of valuation in money." 307 U.S. at 531, 59 S.Ct. at 971. Though the Supreme Court's affirmance without opinion of Abernathy v. Carpenter, supra, is arguably an approval of the application of the civil rights-property rights distinction in determining § 1343(3) jurisdiction, the Court has not had occasion to apply the distinction in one of its opinions since Justice Stone's concurrence in Hague.

However, a district court considering its § 1343(3) jurisdiction in the Fifth Circuit is not writing on a clean slate but rather on a palimpsest. In McGuire v. Sadler, 337 F.2d 902 (5th Cir. 1964), the plaintiff alleged the Texas Land Commissioner and others conspired to fraudulently deprive plaintiff of his land. The Fifth Circuit held the district court had jurisdiction under 28 U.S.C. § 1343 (3) as well as § 1331 though the damage was capable of valuation. In Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964), the plaintiff alleged the denial of her liquor license violated plaintiff's Fourteenth Amendment right to due process and equal protection of the law. The Court noted that plaintiff had not sought to invoke § 1331 jurisdiction and concluded § 1343(3) jurisdiction was present. In Mansell v. Sanders, 372 F.2d 573 (5th Cir. 1967), the plaintiff alleged that the method by which the County Commissioners denied plaintiff's application for a garbage franchise denied plaintiff due process and equal protection of the law. The court noted no federal question jurisdiction was alleged and concluded the district court had jurisdiction under § 1343(3). In Holloway v. Department of

Housing and Urban Development, 418 F.2d 242 (5th Cir. 1969), plaintiffs claimed deprivation of due process of law in the administration of tenant regulations in public housing. The district court viewed the matter as a breach of contract suit and dismissed the complaint for lack of subject matter jurisdiction. The Fifth Circuit reversed, holding the complaint alleged a cause of action under 42 U.S.C. § 1983 and noting that "jurisdiction, in that event, is premised on 28 U.S.C.A. § 1343(3)." 418 F.2d at 243.

In the cases set out above, the land, liquor license, garbage franchise, and tenant's rights do not seem inherently incapable of valuation. However, in each of these cases the court focused on the allegations regarding the method by which these rights were ultimately deprived. In *McGuire*, the court stated that if the alleged "procedural shortcomings are found to have existed and if indeed they deprived the plaintiff of a fair and adequate hearing, these findings would seem sufficient for a showing of a Fourteenth Amendment violation." 337 F.2d at 906. In *Hornsby* the Court stated that, "The role of the courts is to ascertain whether the manner in which this determination [denial of liquor license] was or is made accords with constitutional standards of due process and equal protection." 326 F.2d at 612. In *Mansell*, the Court reversed the district court's dismissal for lack of jurisdiction because the complaint gave notice that "there may have been an application of the Act by the defendant Commissioners in such a way as to deny due process of law and equal protection of the law." 372 F.2d at 576. In *Holloway*, the Court said the district court had § 1343(3) jurisdiction to consider claims "involving the procedures used in the treatment of tenants in public housing." 418 F.2d at 243.

Two Fifth Circuit cases have indicated limits on the trend away from the civil rights-property rights distinction evidenced in *McGuire, Hornsby, Mansell,* and *Holloway*. In Bussie v. Long, 383 F.2d 766 (5th Cir. 1967), plaintiffs al-

leged that the Louisiana authorities' failure to equalize tax assessments violated plaintiffs' Fourteenth Amendment rights to equal protection and due process of law. Jurisdiction was alleged under § 1343(3). The Fifth Circuit in *Bussie* affirmed the district court's dismissal for lack of jurisdiction because it concluded "that a complaint seeking to enjoin the collection of taxes is not a suit within the purview of 42 U.S.C.A. § 1983 since only a property or monetary right is involved." 383 F.2d at 766. While resurrecting the property rights-civil rights distinction, the *Bussie* holding by its own terms is limited to cases involving tax assessments. The Court acknowledged that *Hornsby* and *Mansell* had allowed § 1343 jurisdiction in cases involving "property rights," and did not reverse these holdings. Rather the Court in *Bussie* stated "we do not believe that their holdings [*Hornsby* and *Mansell*] can be extended to a cause of action involving tax assessments * * *" 383 F.2d at 769. The second case which indicates some hesitancy on the part of the Fifth Circuit to abolish completely the civil rights-property rights distinction is Atlanta Bowling Center, Inc. v. Allen, 389 F.2d 713 (1968). In Atlanta Bowling Center, plaintiff alleged the denial of a liquor license infringed plaintiff's Fourteenth Amendment rights to due process and equal protection of the law. The jurisdictional provision relied upon is not identified, though the opinion indicates plaintiffs were relying on *Hornsby* and thus § 1343(3). In a footnote to the opinion the Court states that the question of whether to apply the civil rights-property rights distinction in determining § 1343(3) jurisdiction has not been resolved in the Fifth Circuit because "the jurisdictional dollar amount under 28 U.S.C.A. § 1331 invariably is satisfied. * * *" in the cases in which the question has arisen. 389 F.2d at 715–716, n. 9. This conclusion concerning the presence of jurisdictional amount is questionable in light of the specific statements in *Hornsby* and *Mansell* that no federal question jurisdiction was alleged, and the complete dependence upon

§ 1343(3) in both of the cases. Likewise in *Holloway* the Court referred only to 28 U.S.C.A. § 1343(3) and 42 U.S.C.A. § 1983. Significantly, the Court in *Atlanta Bowling* ruled on the merits of plaintiff's claim, thus apparently assuming jurisdiction of the case.

From the cases set out above, it can be seen that the Fifth Circuit has not at this time ruled on the specific question of whether the civil rights-property rights distinction should be applied in determining § 1343(3) jurisdiction in cases other than attacks on state taxation laws. In the taxation cases *Bussie v. Long, supra,* indicates the distinction will be employed. However, in cases other than taxation, the Fifth Circuit has found § 1343(3) jurisdiction when the underlying right allegedly infringed was not inherently incapable of valuation. The complaint here, like the complaint in *McGuire, Hornsby, Mansell,* and *Holloway,* involves the allegedly unconstitutional method by which state officials denied a right that is arguably capable of valuation. Therefore, it would seem necessary to consider whether the plaintiff's allegations state a claim under 42 U.S.C. § 1983. Consequently, as a practical matter, this court must take jurisdiction under 28 U.S.C. § 1343(3). See generally Baker v. Carr, 369 U.S. 186, 198–200, 82 S.Ct. 691, 7 L.Ed.2d 663 (1961).

In considering the sufficiency of plaintiff's claims under §§ 1983 and 1985, this court must of course be sensitive to the purpose of notice pleading. Though courts frequently dismiss claims for stating "bare conclusions," these dismissals have been properly criticized for frustrating the purpose of notice pleading. *See, e. g.,* 2A Moore, Federal Practice ¶ 8.13 at 1699–1700 (2d ed.). Nevertheless the court should consider all the allegations of the complaint; and "when the facts alleged or assumed within the framework of the complaint, show that the claim is without merit there is no need to go to trial." Hoshman v. Esso Standard Oil Co., 263 F.2d 499, 502 (5th Cir. 1959).

With these guidelines in mind, plaintiff's allegations are not sufficient to state a claim for damages under 42 U.S. C.A. § 1983. Plaintiff's allegations relating to the § 1983 claims are intermingled throughout the 27-page complaint. Essentially, plaintiff's claims are based on an allegedly unconstitutional refusal to grant plaintiff's trailer permit under both the due process and equal protection clauses.

The allegations most directly relating to the claim for denial of due process in refusing the zoning permit are that: (1) a 1965 amendment to the 1955 zoning resolution prohibits trailers in all areas zoned "A–G–1 Agricultural District" except in areas set apart for a trailer park; (2) this 1965 amendment contains no guidelines for the Commissioners' determination concerning the issuance of a trailer permit; (3) when the Fulton County Building inspector learned of plaintiff's plan to erect trailers in violation of the amended zoning resolution, the inspector warned plaintiff by telephone on June 2, 1969 that such action was illegal and also confirmed this warning by letter; (4) on June 16, 1969 plaintiff was arrested for maintaining a trailer without a permit in the area zoned AG–1 in violation of the amended resolution; (5) on July 2, 1969 plaintiff's wife failed an application for a special permit for a trailer park; (6) after 21 days' notice the Atlanta-Fulton County Joint Zoning Board conducted a public hearing following which the Zoning Board recommended denying plaintiff's request for the following reasons: "(a) adverse effect on surrounding properties, (b) no sewer, (c) Cochran Road is not paved"; (7) a second public hearing was held by the Fulton County Board of Commissioners, and both plaintiff and those opposing the trailer park were heard. The Board of Commissioners followed the Zoning Board's recommendations and denied the plaintiff's permit for a trailer park.

In considering the damage action against the County Commissioners and members of the Zoning Board, the questions relating to procedural due process in the hearing must be separated from the questions concerning the over-all con-

stitutionality of the statute. Plaintiff's attack on the over-all constitutionality of the statute will be discussed later.

■ ■ Considering the question of whether plaintiff was afforded procedural due process in the conduct of the hearing, the denial of plaintiff's special use permit should be categorized as an adjudicative process. In such a proceeding, a party is entitled to adequate notice and a fair hearing. *Hornsby, supra* 326 F.2d at 608. In the instant case, plaintiff's allegations do not show inadequate notice, either in terms of time or the factors to be considered by the Zoning Board. Plaintiff initiated the proceeding, thus the Zoning Board's hearing was no surprise; plaintiff's Exhibit A indicates that the Zoning Board's decision on plaintiff's application was made after 21 days' public notice and a public hearing. Plaintiff's attorney also appeared at the hearing at which the Fulton County Commissioners reviewed the Zoning Board's recommendation to deny the permit. (Plaintiff's Exhibit A.) Plaintiff also had notice of the factors that would be considered by the Zoning Board in deciding whether to issue the permit. It is true, as plaintiff states, that the 1965 amendment to the 1955 zoning resolutions does not contain standards for granting zoning permits to trailers. Rather, the 1965 amendment states in part:

"(a) No house trailer shall be permitted in any Agricultural Use District except where the same is located in an area specifically set apart for a trailer park and licensed as such in accordance with the applicable sections of this Resolution."

However, the provision concerning trailers was an amendment to Article XIX of the Fulton County Zoning Resolution of 1955 and Article II of the same resolution contains the statement of purpose for the 1955 zoning resolution, as follows:

"This resolution is entered as part of a comprehensive plan designed for the purposes among others of *lessening congestion on the roads and streets*: * * * promoting the health and general welfare; encouraging such distribution of population and such classification of land uses and utilization as will facilitate *economic and adequate provisions for transportation*, communication, *roads*, airports, water supply, drainage, *sanitation*, * * * and other public requirements. These regulations are made with reasonable consideration * * * to the character of the district and their peculiar suitability for particular uses, and with a general view of promoting desirable living conditions, *protecting property against blight and depreciation*, and encouraging the most appropriate use of land throughout Fulton County." (Emphasis added.)

The 1965 amendment does not contain any provision specifically requiring trailers to be licensed upon the standards set out above. However, Article II would seem to be one of the "applicable sections" in accordance with which the 1965 amendment states trailer permits shall be issued. The 1965 amendment became part of the "comprehensive plan" designed for the purposes set out in Article II. Because it was part of this comprehensive plan, the purposes set out in Article II would provide the guidelines for determining whether a zoning permit should be issued for a trailer park. These purposes indicate that zoning permits will be issued after considering factors such as street congestion and condition, sanitation, and blight and depreciation of property in addition to more general factors such as the health and general welfare of the population. These standards are sufficiently ascertainable to provide the required notice of the relevant factors to be considered by the Zoning Board. *See* Atlanta Bowling Center, Inc., *supra,* holding that the notice requirement was satisfied by an ordinance that emphasized "public interest and welfare" and the relation between the location of the proposed liquor store and factors such as traffic congestion, and the general character of the neighborhood. The Joint

Zoning Board's recommendation to deny the permit was based on three factors: "(a) adverse effect on surrounding properties, (b) no sewer, (c) Cochran Road is not paved." (Plaintiff's Exhibit A.) Thus, in addition to the more general factors specified in Article II of the Zoning Resolution, plaintiff had specific knowledge of the factors that would be considered by the Fulton County Commissioners in reviewing the decision of the Joint Zoning Board.

The second question in determining whether the requisites of procedural due process were met is whether plaintiff was given an opportunity to be heard. The Zoning Board conducted a public hearing on August 27, 1969. (Plaintiff's Exhibit A.) The County Commissioners conducted a public hearing on September 3, 1969. (Plaintiff's Exhibit A.) Plaintiff's attorney appeared at the hearing before the Fulton County Commissioners and argued the case for plaintiff. Those opposing a trailer park on plaintiff's land appeared and stated their objections. (Plaintiff's Exhibit A.) Plaintiff does not allege procedural unfairness in the manner in which the hearing was conducted. He does not allege the conclusions of the Commissioners were unsupported by the evidence; rather he alleges the conclusions drawn by the Board from the evidence are incorrect because they differ from plaintiff's conclusions drawn from the evidence. This court is not a supreme zoning board. It must only consider whether due process was denied in the zoning procedure. Plaintiff's allegations, taken as a whole, do not allege sufficient lack of notice or hearing to constitute a denial of due process in the zoning procedure.

Plaintiff's complaint is replete with allegations that the decision by the Board of Commissioners denies equal protection of the law because it was "arbitrary and capricious." To support his equal protection claims, plaintiff alleges the Fulton County Commissioners refused plaintiff's permit for a trailer park in the agricultural district; however, the Commissioners allowed persons to maintain shanties, privies, chicken houses, hog pens, horse and cattle barns and manure piles. Quoting from Yick Wo v. Hopkins, 118 U.S. 356, 373–374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1885), plaintiff alleges these actions indicate the county authorities are applying the zoning regulations "with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights." However, plaintiff does not allege that the County Commissioners have allowed other trailer parks in the area while refusing plaintiff's trailer park. The allegations concerning hog pens and horse barns do not show inequality of treatment of similar persons (or interests) under similar circumstances. None of plaintiff's allegations indicate treatment comparable to the alleged racial discrimination in *Yick Wo* where two hundred Chinese persons had been denied laundry permits while eighty non-Chinese persons were permitted to carry on laundry businesses under similar conditions. Thus, plaintiff's allegations are not sufficient to state a claim for denial of equal protection under the most liberal interpretation of what is meant by equal protection.

██ Plaintiff also claims damages under 42 U.S.C.A. § 1985(2) and (3). Paragraph 46 of plaintiff's complaint alleges the following acts were committed by one or more of the defendants with the knowledge, consent and cooperation of the other defendants: (1) the Fulton County Building Inspector notified plaintiff in writing that the 1965 amendment to the 1955 zoning resolution prohibited installation of a trailer park on plaintiff's land (without a permit); (2) the building inspector swore out a warrant for plaintiff for violating the 1965 amendment; (3) prosecution was initiated in Fulton Criminal Court and the case is now pending in Fulton Superior Court. Plaintiff attempts to state a claim by tracking the language of § 1985 (2). The essence of plaintiff's claim

may be broken down as follows: (1) the defendants' acts of writing the warning letter, swearing out the warrant, and initiating prosecution in Fulton Criminal Court (2) were done pursuant to a conspiracy to obstruct the course of justice (3) with intent to deny plaintiff equal protection of the laws (4) in his efforts to secure permission to place mobile homes and house trailers on his property (5) as he had a right to do under the law. Plaintiff concludes his allegations with the claim that defendants' acts were attempts "to deter him in his said lawful efforts by intimidation, threats, false arrest, malicious prosecution and false imprisonment." The claims are subject to question for several reasons. First, the conspiracy under § 1985(2) must be a conspiracy to do acts that will impede or hinder the due course of justice with an intent to deny plaintiff equal protection of the law. The Fifth Circuit has made it clear that civil rights complaints need not be specific. Pred v. Board of Public Instruction of Dade County, Florida, 415 F.2d 851 (1969). However, plaintiff must at least allege overt acts which could possibly carry into effect the conspiracy to obstruct the due course of justice. *See, e. g.*, Powell v. Workmen's Compensation Board of State of New York, 327 F.2d 131 (2d Cir. 1964). Here the overt acts which are allegedly the product of the conspiracy—writing the warning letter, securing the arrest warrant, initiating the prosecution—could in no way obstruct or hinder consideration of plaintiff's application for a permit for a trailer park. In fact at the time they occurred no application had been filed. The warning letter was dated June 2, 1969, though plaintiff alleges he received it some time later. The warrant was signed June 18, 1969, and the hearing was held on the warrant on that day. All of these events occurred before plaintiff applied for a permit for trailers on his land. Rather than hindering plaintiff in his efforts to secure permission to place mobile homes on his property, the initiation of criminal proceedings

for violating the zoning ordinance apparently served as a catalyst for plaintiff's application for a permit. At any rate, all of the above overt acts alleged by plaintiff were done before plaintiff ever applied for a permit. It is difficult to see how they could possibly have been done to prevent a hearing on the issuance of the permit. Indeed, plaintiff's allegations further reveal that plaintiff did have a hearing on August 27, 1969 before the Zoning Board; the Zoning Board's decision was reviewed by the Fulton County Commissioners on September 3, 1969. Plaintiff did not apply for the permit until July, and 21 days' public notice was required by the Zoning Board before the public hearing. Thus, plaintiff's own additional allegations contradict his conclusory claims that he was hindered in his attempt to obtain a special use permit. His complaint reveals that his application for a permit was afforded full consideration by the Zoning Board and the County Commissioners. Furthermore, the criminal proceeding initiated against plaintiff could have absolutely no effect on the issuance of the permit. The fact that a person is being prosecuted for violating a zoning ordinance is irrelevant in a subsequent determination by the Zoning Board concerning whether that person should be issued a special use permit. The Zoning Board did not indicate the prior violation was a reason for denial of the special use permit, and plaintiff has not alleged that these prior violations were considered. Plaintiff also alleges that another overt act was the appearance of defendants W. E. Ristau, Vaughn Watts, Joe S. Chambers, Mrs. Lois Chambers, and Ernest T. Shiflett at the public hearing to object to the issuance of the special permit. It is inconceivable that the mere appearance of persons at a public hearing to state their objections to the issuance of a permit should automatically involve them in some type of section 1985 conspiracy against those they oppose. Considering plaintiff's allegations as a whole, plaintiff does not allege acts which

could have obstructed justice in the manner required for a section 1985(2) claim.

Plaintiff also mentioned 42 U.S.C.A. § 1985(3) in his complaint though it is difficult to relate any of the allegations to a section 1985(3) claim. It may be that plaintiff's allegations could be read as claiming the defendant county officials conspired to deny plaintiff equal protection of the law by voting to deny his zoning permit. If this is plaintiff's allegation, it is without merit. As stated in the discussion of plaintiff's 1983 claim above, the mere fact that plaintiff's permit for a trailer park in an agricultural district was denied, while hog pens and horse barns were permitted, does not even suggest a denial of equal protection of the law.

■ Plaintiff has also requested injunctive and declaratory relief on the grounds that the state statute and county zoning resolution are unconstitutional for a number of reasons. The issuance of an injunction here is prevented by the anti-injunction statute (28 U.S.C.A. § 2283) which prohibits injunctions "to stay proceedings in a State court except as expressly authorized by Act of Congress. '* * *'." A judicial exception to the section 2283 prohibition of injunctions has been carved out in˙ the area of fragile First Amendment rights where the threat of criminal proceedings may in itself irreparably harm the First Amendment rights. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Plaintiff has erroneously tried to bring himself within the *Dombrowski* exception. This exception is not available here because plaintiff has alleged no infringement of First Amendment rights; furthermore, the criminal proceedings here are well under way. An injunction is clearly prohibited by 28 U.S.C.A. § 2283.

■ Since injunctive relief is improper, plaintiff should not be allowed to effect the same ends with a comparable result on state proceedings by means of a declaratory judgment. Brooks v. Briley, 274 F.Supp. 538, 553 (M.D.Tenn.1967) (three-judge), aff'd. 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647 (1968). A declaratory judgment, like an injunction, would disrupt the criminal proceedings that have been initiated against plaintiff in state courts. Plaintiff can raise in the state proceedings the issues he seeks to raise here. He can ultimately obtain review of the state determinations of the federal constitutional issues by appeal from the State Supreme Court. Declaratory relief would be improper under these circumstances.

Finally, plaintiff has claimed the state statute and county zoning laws involved here violate various provisions of the Georgia Constitution. As pointed out above, a state proceeding is pending in which the same issues may be raised. There is no danger of irreparable injury. It would seem much more economical for this court to refuse pendent jurisdiction and allow these state constitutional issues to be decided in the state courts.

In summary, a three-judge court was not convened because no state statute of general application was attacked. This court took jurisdiction under 28 U.S.C.A. § 1343 to consider the claims of plaintiff. Plaintiff did not state a claim for damages under 42 U.S.C.A. § 1983 or 42 U.S.C.A. § 1985(2) and (3); concerning these claims defendant county officials' motion to dismiss is granted. The "prayer for dismissal" included in the answer of defendants Ristau, Watts, Shiflett, Joe S. Chambers, and Lois Chambers, is treated as a motion to dismiss and is granted. This court did not consider the claims for injunctive or declaratory relief because either type relief would be improper where no First Amendment rights were threatened and the state criminal proceeding was well under way. Therefore defendant county officials' motion to dismiss is also granted concerning these claims. Because of these state proceedings, this court did not take pendent jurisdiction over plaintiff's claims that the statute and ordinance violated the Georgia Constitution; consequently these claims are dismissed for lack of jurisdiction.