J. Randolph LIPSCOMB, et al., Plaintiffs,

v.

The COLUMBUS MUNICIPAL SEPARATE SCHOOL DISTRICT, et al., Defendants.

No. 1:92 CV 20–D–D.

United States District Court, N.D. Mississippi, Eastern Division.

May 1, 2003.

**628**

Dion J. Shanley, Hickman, Goza & Spragins, PLLC, Ridgeland, MS, Thomas G. Wallace, Thomas G. Wallace & Associates, Columbus, MS, for defendants.

Luther T. Munford, Phelps, Dunbar, Jackson, MS, Joseph Randolph Lipscomb, Columbus, MS, for plaintiffs.

### OPINION GRANTING MOTION FOR ATTORNEYS' FEES AND EXPENSES

DAVIDSON, Chief Judge.

Presently before the court is the Plaintiffs' motion for an award of attorneys' fees and expenses.[1] Upon due consideration, the court finds that the motion should be granted, but not in the full amount requested by the Plaintiffs.

*A. Factual and Procedural Background*

This case's factual background and the history behind Mississippi's sixteenth-section lands has already been well documented. *See. e.g., Lipscomb v. Columbus Mun. Separate Sch. Dist.,* 269 F.3d 494, 498–99 (5th Cir.2001).[2] In order to avoid needless

---

1. Also pending before the court is the Defendants' motion to exceed page limitation by four pages. The court shall grant this motion and consider the Defendants' proffered brief.

2. In short, before Mississippi became a state, the United States Congress set aside the six-

teenth section of every township in the Mississippi Territory to be used for the benefit of public schools. Upon granting statehood to Mississippi in 1817, Congress gave the sixteenth-section land to the new state for the benefit of its schools. Thereafter, the Mississippi legislature authorized the leasing of the

repetition, the court shall briefly recite only the facts most relevant to this litigation in its current posture.

In 1890, Mississippi ratified its current constitution. Section 95 of Mississippi's 1890 constitution prohibits the donation of state lands to private parties. *See* Miss. Const. of 1890, art. 4, § 95 ("Lands belonging to, or under the control of the state, shall never be donated directly or indirectly, to private corporations or individuals, or to railroad companies."). In 1989, the Mississippi Supreme Court held that Section 95's non-donation principle prohibits leases or sales of State land, including leases of sixteenth-section lands, for grossly inadequate consideration. *Hill v. Thompson*, 564 So.2d 1, 9 (Miss.1989).

Apparently relying on *Hill*, the State and individual school boards began asserting that existing sixteenth-section leases for nominal consideration were void and due to be renegotiated. The President of the local school board in Columbus followed suit and announced in 1990 that the Columbus sixteenth-section leases, most of which are to this day being leased for pennies per year, were also invalid and would have to be renegotiated. This announcement came in spite of the fact that the Columbus sixteenth-section leases were unique because they contained "renewable forever" provisions that were signed before the ratification of the 1890 Mississippi Constitution.

Various Columbus leaseholders responded by filing suit in the Chancery Court of Lowndes County, Mississippi, seeking confirmations of title. That suit was subsequently voluntarily dismissed by the Plaintiffs, and the instant suit was filed in federal court on January 24, 1992. In this federal declaratory judgment action, the Plaintiffs sought two forms of

relief: (i) to certify a class of leaseholders; and (ii) a declaration that the State's threatened action to void the leases and renegotiate would violate the Contract Clause of the United States Constitution. The Plaintiffs' claims seeking confirmations of title were abandoned.

The court certified the class of leaseholders, but then abstained under the *Pullman* and *Burford* doctrines. *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, No. 1:92CV020-S-D, 1996 WL 671715, at *3-*4 (N.D.Miss. July 23, 1996). The United States Court of Appeals for the Fifth Circuit subsequently reversed the court's ruling on abstention and remanded. *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 240-42 (5th Cir.1998). Upon remand, the court redefined the class and granted summary judgment in favor of the Plaintiffs. *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 88 F.Supp.2d 640 (N.D.Miss.2000). On October 3, 2001, the Fifth Circuit affirmed the court's ruling, and remanded the case "for further proceedings including any necessary resolution of disputes over the entitlement of individual class members to the relief ... affirmed by this court." *Lipscomb*, 269 F.3d at 514. The United States Supreme Court subsequently denied the Defendants' petition for writ of certiorari. *See Clark v. Lipscomb*, 535 U.S. 988, 122 S.Ct. 1541, 152 L.Ed.2d 467 (2002).

The Plaintiffs then filed a motion for summary judgment on remand with this court on March 18, 2002. On May 24, 2002, the court granted the motion in part, ruling, *inter alia*, that the lease held by the Mayor and City Council for the City of Columbus is within the class of leaseholders entitled to class relief. Thereafter, on August 14, 2002, the court entered an or-

school lands, the proceeds of which would

finance public schools.

der granting the Plaintiffs' motion to establish procedure and set deadlines, granting the Defendants until October 15, 2002, to inform the court of any Columbus sixteenth-section lessees with a post–1890 unredeemed tax sale in their chain of title. No such lessees were identified by the Defendants. The court then entered final judgment on December 12, 2002, holding that the Plaintiffs are entitled to declaratory and injunctive relief, and enjoining the Defendants from commencing further action in any court and interfering with the class members' renewal leases in 2019.

In the meantime, the Plaintiffs filed the pending motion for attorneys' fees and expenses, in which they seek an award of $904,291.50 in attorneys' fees and $54,756.79 in expenses for the law firm of Phelps Dunbar LLP, and an award of $676,500 in attorneys' fees and $20,922.51 in expenses for attorney and class member Randolph Lipscomb. The Plaintiffs further seek to have the court apply a 3X multiplier to the attorneys' fee awards, bringing the total requested attorneys' fees to $2,712,874.50 for Phelps Dunbar and $2,029,500 for Randolph Lipscomb. Briefing on this motion was recently completed and the court is prepared to rule.

### B. Standard for Award of Attorneys' Fees

The Plaintiffs seek attorneys' fees pursuant to 42 U.S.C. § 1988. Section 1988 provides in relevant part that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . ." See 42 U.S.C. § 1988. Accordingly, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983);

*Blanchard v. Bergeron*, 489 U.S. 87, 89, 109 S.Ct. 939, 942, 103 L.Ed.2d 67 (1989).

### 1. Whether the Plaintiffs Prevailed

A plaintiff must be a "prevailing party" in order to recover attorneys' fees under § 1988. Plaintiffs may be considered prevailing parties for attorneys' fee purposes if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. Here, it is undisputed that the Plaintiffs are the prevailing parties in this litigation.

### 2. Whether the Fee is Reasonable

The Supreme Court has provided that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. The product of these two factors—number of hours and the hourly rate—is known as the "lodestar." *Mid–Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir.2000); *League of United Latin Am. Citizens (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir.1997).

The fee applicant bears the burden of proving the reasonableness of the number of hours claimed. *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933; *Cooper v. Pentecost*, 77 F.3d 829, 832 (5th Cir.1996). The district court may reduce the fee award if the documentation of hours is inadequate. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. The court may also reduce the award where the hours are "excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. 1933.

The fee applicant also bears the burden of proving the reasonableness of the hourly rate claimed. *Blum v. Stenson*,

465 U.S. 886, 895–96, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). In *Blum,* the Supreme Court explained that

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum,* 465 U.S. at 895–96, 104 S.Ct. 1541.

■ Once the lodestar has been calculated, the district court must then address its reasonableness as a whole. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Longden v. Sunderman,* 979 F.2d 1095, 1099 (5th Cir.1992). In doing so, the district court is to consider the factors set out by the United States Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The *Johnson* factors are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(3) the skill required to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to the acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) the time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and the length of the professional relationship with the client; and

(12) awards in similar cases.

*Johnson,* 488 F.2d at 717–19; *Singer v. City of Waco, Texas,* 324 F.3d 813, 829 (5th Cir.2003). After considering these factors, the district court may adjust the lodestar upward or downward. *LULAC,* 119 F.3d at 1232; *see Walker v. United States Dep't of Hous. and Urban Dev.,* 99 F.3d 761, 771–73 (5th Cir.1996) (describing limited circumstances in which adjustment to lodestar is appropriate).

### C. Discussion

#### 1. Whether the Relief Sought is Remediable under 42 U.S.C. § 1983

■ As an initial matter, the Defendants assert that the Plaintiffs are not entitled to an award of attorneys' fees under 42 U.S.C. § 1988 because the Constitutional provision at issue in this case, Article I, Section 10, Clause 1 of the United States Constitution—better known as The Contracts Clause—is not remediable under 42 U.S.C. § 1983, thereby removing this case from the purview of § 1988. In so asserting, the Defendants ignore both United States Supreme Court and Fifth Circuit precedent holding that Contracts Clause rights fall within the protection of § 1983. *Dennis v. Higgins,* 498 U.S. 439, 450–51, 111 S.Ct. 865, 872, 112 L.Ed.2d 969 (1991); *McGuire v. Sadler,* 337 F.2d 902 (5th Cir.1964). And, although the Plaintiffs in this case specifically sought relief under § 1983, the failure to specifically plead § 1983 as a cause of action is not fatal to a subsequent claim for attorneys' fees under § 1988. *Kirchberg v. Feenstra,*

708 F.2d 991 (5th Cir.1983). Accordingly, the court finds that the Plaintiffs have properly sought relief under § 1983 and, as noted above, are prevailing parties. Thus, the Plaintiffs may be awarded attorneys' fees pursuant to 42 U.S.C. § 1988.

### 2. Determination of the Lodestar

The court must begin its analysis by determining the lodestar, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. Here, both the number of hours reasonably expended as well as what constitutes a reasonable hourly rate are in dispute.

#### a. Number of Hours Reasonably Expended

The Plaintiffs seek an award for a total of 3,748.5 attorney hours and 901.25 paralegal hours [3] for Phelps Dunbar and a total of 2,707 attorney hours for Randolph Lipscomb; the Plaintiffs claim that these hours were reasonably expended on this litigation. The Defendants dispute the total number of hours claimed by the Plaintiffs.

■ Of the 3,748.5 Phelps Dunbar attorney hours for which the Plaintiffs seek an award, the court finds that 1,047.75 of the hours were expended in state court litigation in the Chancery Court of Lowndes County prior to the commencement of this litigation. Accordingly, the fees for those hours are not attorneys' fees contemplated by § 1988, and no award shall be made for those hours. *See Simi Inv. Co., Inc. v. Harris County, Texas*, 236 F.3d 240, 255 (5th Cir.2000) (holding that "attorneys' fees resulting from state court litigation that does not seek to enforce federal constitutional rights, but which does precede a successful § 1983 suit, are

not attorneys' fees contemplated by § 1988."); *Brantley v. Surles*, 804 F.2d 321, 325 (5th Cir.1986).

Here, the Plaintiffs admittedly did not file the present lawsuit until January 24, 1992, and did not specifically plead § 1983 as a cause of action until a subsequent date. The prior state court action was an action to quiet and confirm title, and the Plaintiffs did not allege a § 1983 violation in that lawsuit. Thus, in light of the fact that the Plaintiffs have failed to demonstrate that the prior state suit was part of the enforcement of the Plaintiffs' federal § 1983 claim, legal fees related to that litigation cannot be recovered under § 1988. *Simi*, 236 F.3d at 255. For this reason, 1047.75 of Phelps Dunbar's claimed attorney hours, as well as 105 of Phelps' claimed paralegal hours and 11.5 of Lipscomb's claimed attorney hours shall be disallowed.

■ The Defendants' remaining arguments concerning the number of hours expended by Plaintiffs' counsel on this litigation involve challenges to a minute number of hours that were supposedly "block-billed" by Phelps Dunbar, and a challenge to the 41 hours that Phelps Dunbar spent seeking to unsuccessfully remove several related state court actions to this court; actions that this court ultimately remanded to state court. *See Clark v. Mayor and City Council of City of Columbus*, 191 F.Supp.2d 743 (N.D.Miss.2002). The court, upon detailed review of the billing records in question, finds that the Defendants' arguments concerning block-billing are without merit. The court shall, however, disallow the 41 hours of attorney time spent by Phelps Dunbar on the unsuccessful removal of the related state court cases. As for the remainder of the hours submitted by

---

**3.** Reasonable fees may be granted for hours worked by paralegals. *Missouri v. Jenkins by*

*Agyei*, 491 U.S. 274, 284–85, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989).

Plaintiffs' counsel, the court has reviewed the billing records and finds that the hours were reasonably expended in this litigation.

Accordingly, the court finds that the Phelps Dunbar law firm reasonably expended 2,659.75 attorney hours and 796.25 paralegal hours in the successful pursuit of this litigation, and Randolph Lipscomb reasonably expended 2,695.5 hours on this litigation. These numbers are similar to the number of hours the Defendants expended in defending this very complex case, and in the court's judgment are appropriate in a case of this magnitude.

### b. Reasonably Hourly Rate

■ Hourly rates for attorney fees must be reasonable within the relevant market; here, the relevant market is the Northern District of Mississippi. *Blum*, 465 U.S. at 895–96, 104 S.Ct. 1541; *Brown v. Ascent Assurance, Inc.*, 191 F.Supp.2d 729, 735 (N.D.Miss.2002). The Plaintiffs seek varying hourly rates for the many different attorneys whom have worked on this case; the Defendants challenge the submitted rates as excessive.

For its part, Phelps Dunbar has primarily staffed this case, at any given time, with one senior partner, one junior partner, one associate attorney, and one paralegal. Due to the duration of this litigation, however, many of the people holding these positions (and the hourly rates sought) have changed, particularly at the associate and paralegal levels. Overall, however, Phelps Dunbar seeks an average rate of $220 per hour of attorney time (the requested rates vary from $125 to $285 per hour) and an average rate of $85 per hour of paralegal time (with a range of $45 to $95 per hour); Randolph Lipscomb seeks a flat rate of $250 per hour for his services.

In light of the fact that over two dozen Phelps Dunbar attorneys and over two dozen Phelps Dunbar paralegals have worked on this case at one time or another, the court shall not determine an individual hourly rate for each separate Phelps Dunbar attorney and paralegal, but rather shall calculate one reasonable hourly rate for all approved attorney hours and one reasonable hourly rate for all approved paralegal hours; the court shall then multiply those hourly rates by the number of hours Phelps Dunbar reasonably expended on this litigation, as noted above. *See, e.g., In re Shell Oil Refinery*, 155 F.R.D. 552, 570 (E.D.La.1993). The court shall then calculate a separate rate for Randolph Lipscomb's hours and multiply that rate by the number of hours he reasonably expended on this litigation.

■ The court finds that an overall hourly rate of $190 per hour for Phelps Dunbar's attorney hours is reasonable. *See Brown*, 191 F.Supp.2d at 736 (approving rate of $200 per hour for highly skilled veteran attorney involved in complex litigation in this district). While many of Phelps' attorney hours were billed by associates whose requested billing rates are significantly less than $190 per hour, the complex nature of this case, as well as the fact that many of the Phelps attorneys who worked on this case have exceptional backgrounds (including two former United States Supreme Court law clerks, three former Fifth Circuit law clerks and one former Mississippi Supreme Court law clerk), leads the court to find that an overall rate of $190 per hour is reasonable. In announcing this figure, the court notes that Luther Munford, the Phelps attorney most intimately involved in this litigation, billed some 44 percent of Phelps' total submitted attorney hours, and Phelps partners in all billed some 71 percent of those hours, with associate attorneys billing the remaining 29 percent. Thus, assuming a rate of $200 per hour for the partner hours (the rate approved for part-

ner-level attorneys in *Brown*) and $125 per hour for the associate hours (the rate requested by Phelps and not disputed by the Defendants), Phelps is entitled to an overall rate of between $175 and $180 per attorney hour. In light of the factors listed above, however, the court finds that a rate of $190 per hour, as opposed to a rate of $175 to $180 per hour, is reasonable for Phelps Dunbar's attorney hours.

As for Phelps' paralegal hours, the Defendants do not challenge Phelps' submitted average rate of $85 per hour for those hours. The court also finds this request reasonable, and will thus grant Phelps a rate of $85 per hour for 796.25 approved paralegal hours.

As for Randolph Lipscomb's hours, the court finds that Lipscomb is entitled to a rate of $175 per hour for his approved hours. Lipscomb, while an experienced attorney, did not have primary responsibility for litigating this case and was utilized primarily as a research attorney, albeit a highly experienced and uniquely qualified one. Thus, the court finds that $175 an hour is a reasonable rate for the hours approved for Mr. Lipscomb. *See Brown*, 191 F.Supp.2d at 735 (approving rates of $130 and $160 per hour for mid-level associate attorneys in this district).

Thus, the court calculates the lodestar as follows:

1) $190/hour for 2659.75 hours = $505,352.50 in attorneys' fees for Phelps Dunbar;

2) $85/hour for 796.25 hours = $67,681.25 in paralegal fees for Phelps Dunbar; and

3) $175/hour for 2695.50 hours = $471,712.50 in attorneys' fees for Mr. Lipscomb;

### 3. Reasonableness of the lodestar and the *Johnson* Factors

As the court calculated above, the lodestars are $573,033.75 for Phelps Dunbar (including paralegal hours) and $471,712.50 for Randolph Lipscomb. The court will now evaluate this total in light of the *Johnson* factors. The court notes, however, that the use of the second, third, eighth, and ninth *Johnson* factors has been greatly circumscribed. *See Walker*, 99 F.3d at 771 (indicating that most *Johnson* factors are reflected in lodestar amount and cannot be used to compute any upward or downward adjustment of lodestar). In addition, the novelty and complexity of the issues are deemed to be "fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in [the lodestar.]" *Blum*, 465 U.S. at 899, 104 S.Ct. 1541. And while the most critical factor in determining the reasonableness of a fee award is the degree of success obtained, the Supreme Court has specifically held that the "results obtained are presumed to be fully reflected in the lodestar and that the lodestar is presumed to be a reasonable fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998). Enhancement based upon this factor is only appropriate in rare cases supported by specific evidence in the record and detailed findings by the court. *Alberti v. Klevenhagen*, 896 F.2d 927, 936 (5th Cir.1990). Thus, an upward adjustment to the lodestar is considered to be justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charges and that the success was exceptional." *Blum*, 465 U.S. at 899, 104 S.Ct. 1541.

■ It therefore follows, as the Fifth Circuit has repeatedly emphasized, that most of the *Johnson* factors are reflected in the lodestar amount and cannot be used to adjust the lodestar upward or downward, and that the lodestar is presumptively reasonable and should be enhanced or reduced only in exceptional cases. *Walker*, 99 F.3d at 771; *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993). The court also notes that it considered several of the factors, such as the time and labor required, while calculating the lodestar itself. In evaluating the reasonableness of the lodestar, therefore, the court will be careful not to double-count these factors as well. *Walker*, 99 F.3d at 771; *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.1993).

### a. The *Johnson* factors

The court finds that the parties have failed to present evidence sufficient to overcome the presumption that the lodestar is a reasonable fee; thus the court holds that. an adjustment of the lodestar is not warranted in this case. *See, e.g., Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir.1999) (reversing enhancement of lodestar for time limitations, results obtained, and preclusion of other employment by attorney, noting that Supreme Court "has stated that two of the Johnson factors considered by the district court, 'complexity of the issues' and 'results obtained,' are 'presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.' ").

■ While the experience, reputation and ability of Plaintiffs' counsel is unquestioned, the court finds that this factor favors no adjustment to the lodestar. Likewise, the record does not support a finding that the Plaintiffs' attorneys were precluded from taking on specific other work that would have been lucrative or resulted in greater fees than those obtained in this case. The record is likewise devoid of credible evidence that this case was undesirable, that any of the Plaintiffs had a prior professional relationship with counsel sufficient to justify an upward increase in the lodestar, that awards in similar cases have been higher, or that any unreasonable time limitations were placed on Plaintiffs' counsel by the clients or the circumstances. Plaintiffs' counsel has also not established that the time and labor required, the novelty and difficulty of the questions involved, or the skill required was so exceptional so as to justify an upward adjustment in the lodestar. Thus, the court shall deny the Plaintiffs' request for an upward adjustment to the lodestar. Likewise, the court finds that a downward adjustment to the lodestar is not warranted.

### b. Conclusion

In sum, the court finds that analysis of the *Johnson* factors leads to the conclusion that no adjustment to the court-calculated lodestar is warranted, and there is no evidence in the record sufficient to overcome the presumption that the lodestar is reasonable under § 1988. Thus, no multiplier shall be awarded, and the court hereby denies the Plaintiffs' request for a 3X multiplier of the lodestar.

### 4. Expenses

In addition to an award of attorneys' fees, the Plaintiffs seek an award of expenses in the amount of $54,756.79 for Phelps Dunbar and in the amount of $20,922.51 for Randolph Lipscomb.

An attorney's reasonable out-of-pocket expenses which are ordinarily charged to fee paying clients may be recovered under 42 U.S.C. § 1988. *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th

Cir.1990). These expenses include charges incurred for photocopying, facsimile transmissions, computerized legal research, travel, and telephone usage. *Associated Builders,* 919 F.2d at 380; *Laudermilk v. Fordice,* No. 1:95CV161–D–D, 1997 WL 786776, at *8 (N.D.Miss. Nov.14, 1997).

Upon close review of the subject expense records, the court finds that the submitted expenses are routinely charged to fee paying clients and are thus recoverable, with the exception of the expenses that were incurred in direct support of state court litigation prior to the filing of this lawsuit. *See Simi,* 236 F.3d at 255. Thus, $5,086.34 of Phelps Dunbar's submitted expenses, and $24.00 of Randolph Lipscomb's submitted expenses, are not recoverable. *Id.* The court, therefore, shall award expenses in the amount of $49,670.45 for Phelps Dunbar and in the amount of $20,898.51 for Randolph Lipscomb.

### D. *Conclusion*

In sum, the court finds that the Plaintiffs' motion for attorneys' fees and expenses should be granted in the following amounts, as calculated above: $505,352.50 in attorneys' fees for Phelps Dunbar; $67,681.25 in paralegal fees for Phelps Dunbar; $471,712.50 in attorneys' fees for Randolph Lipscomb; $49,670.45 in expenses for Phelps Dunbar; and $20,898.51 in expenses for Randolph Lipscomb.

A separate order in accordance with this opinion shall issue this day.